*545 OPINION OF THE COURT
Edward J. Greenfield, J.
A “shaggy dog story” is an offbeat form of humor in which routine and ordinary events, frequently involving an animal companion, unfold to an inwardly logical but bizarre and ostensibly humorous denouement. This case involves that kind of “shaggy dog story.”
Plaintiff, Amanda Bradshaw, a court interpreter employed by the Federal Government, has asserted that her appearance at the ASPCA to change the name and the registration of her newly adopted dog, Sparky, gave rise to a chain of events in which she was arrested by four policemen at a bagel buffet, handcuffed, accused of armed robbery, and when cleared, nevertheless held in custody on a warrant because she had been charged, allegedly unbeknownst to her, with harboring an unlicensed dog.
The essence of plaintiff’s complaint, as amplified in her deposition, is as follows:
On March 12, 1979, plaintiff says she appeared at the Manhattan offices of the ASPCA for the purpose of having her dog spayed. She informed defendant Silverstein, an employee of the ASPCA (sued herein as Silversmith), that the dog, which had been adopted from the ASPCA pound and licensed six weeks before, had been given to her by an acquaintance. Plaintiff described the dog as “a mutt — part Collie, part German Shepherd and part Golden Retriever.” Plaintiff asked Ms. Silverstein how she could officially change the dog’s name from “Sasha” to “Sparky”. In addition, she wanted the dog’s registration and license changed to reflect that she, rather than her friend, was now the dog’s owner. Ms. Silverstein said she would have to get a new license and gave her a “pink slip.” The dog was left overnight for spaying. The dog was picked up the next day, but plaintiff had tucked the pink slip away, and then did nothing further about it.
On July 5, 1979, at around 6:00 p.m., she walked into a store with a male companion to get bagels, and she was suddenly surrounded by four policemen. The police said they were looking for a stick-up team and that they would have to go down to the station for questioning. They were *546 handcuffed and put into the car. When it was established she had nothing to do with any robbery, she was not released, for she was informed that there was an outstanding warrant for her arrest. She was locked in a cell until midnight, when her lawyer finally obtained her release. On the following day, she appeared in Criminal Court and was informed that the charge against her was harboring a dog without a license. She admitted in court that she did not have a license for the dog (her friend had obtained it), and pleaded guilty, being released upon her promise to get her dog a new license. She then did obtain the new license in her own name.
The complaint sets forth four separate causes of action demanding $4,000,000 in damages — $2,000,000 compensatory and $2,000,000 punitive. Defendants, annexing the transcripts of plaintiff’s depositions, move for summary judgment. The first cause of action alleges that inasmuch as the dog in question was, in fact, a licensed dog at the time Ms. Silverstein issued the violation and complaint charging the plaintiff with harboring an unlicensed dog, that such action was without basis and the result of “negligence” in carelessly starting a chain of events which led to the detention of the plaintiff, the retaining of counsel, a court appearance and plea of guilty.
The second cause of action, which realleges the same operative facts, seeks punitive damages. This cause of action, of course, cannot stand as an independent cause of action and is stricken (Weir Metro Ambu-Serv. v Turner, 57 NY2d 911; Trans-State Hay & Feed Corp. v Faberge, Inc., 42 AD2d 535, affd 35 NY2d 669).
The third cause of action alleges that the defendants infringed her civil rights in violation of section 1983 of title 42 of the United States Code.
The fourth cause of action alleges that the conduct of the defendant was “wanton and tortious”. This appears to be an alternative pleading to the first cause, that if the conduct of defendants was not negligent, it was deliberate.
Defendants’ motion to dismiss the complaint is premised on the theory that all causes of action alleged really plead variations on the tort of malicious prosecution and a cause of action for malicious prosecution will not lie. A *547 cause of action for malicious prosecution requires the commencement of a criminal proceeding by the defendant, the termination of the proceeding in favor of the accused, the absence of probable cause and actual malice. There is no question but that the summons for the violation of harboring an unlicensed dog and the warrant issued upon plaintiff’s nonappearance were colorably valid. There is no question but that the criminal proceeding was not terminated favorably to plaintiff because she entered a guilty plea. Whether this was a matter of expediency or not, it bars a cause of action for malicious prosecution.
The fourth cause of action, which alleges “wanton” conduct, clearly is tantamount to alleging malice and under those circumstances, must be construed as a cause of action for malicious prosecution, which cannot be sustained.
Plaintiff contends, however, that she is not proceeding solely by way of malicious prosecution, and that the gravamen of the first cause of action is negligence. It is asserted that the negligence alleged is (a) that the party issuing the summons lacked the experience and knowledge necessary to be given such authority by the ASPCA and (b) the party issuing the summons improperly and unreasonably construed the law to determine that the plaintiff was in violation of the licensing requirements when the dog was, in fact, licensed and merely transfer of ownership was sought and that she acted hastily without regard for the consequences.
It was an intolerable “Catch 22” situation. Plaintiff, having come in with law-abiding intent to get the proper papers, by her very act of applying for them admitted that she did not have such papers at that time, so that technically she was in violation of chapter 533 of the Laws of 1974, amending chapter 115 of the Laws of 1894 with respect to dog licensing.[1]
Unfortunately, the Appellate Division of the Second Department has, subsequent to the institution of this cause of action, held that a defendant may not be found liable for the negligent instigation of a prosecution. (Jestic v Long Is. Sav. Bank, 81 AD2d 255.) In that case, as in this, causes of *548 action for malicious prosecution and negligence were pleaded on the ground that the actions of the complainant were either willful and malicious or were negligent. The court held that in actuality, whether alleging malice or negligence, plaintiff was seeking the same relief for the same wrong. There being no malice (the prosecution of plaintiff for embezzlement having been instigated in good faith on the basis of what were subsequently determined to be computer errors), the cause of action for malicious prosecution would not lie, and the pleading of ordinary negligence, below the level of wanton and reckless acts, which presupposes a mistake in good faith, similarly would not give rise to a cause of action, since as a matter of public policy those who act in a reasonable manner in bringing to justice those they believe are criminals must be protected. “That immunity cannot be broken down upon a mere allegation of negligence or even gross negligence. Want of probable cause must also be proved, and this may not be inferred from defendant’s malice alone.” (Supra, p 259.) Plaintiff, having pleaded guilty in this case, is precluded from asserting lack of probable cause.[2]
Thus, a claim of “negligent” instigation of a prosecution states no cause of action. It is possible, however, that a claim of negligence in this case could be sustained, based not on the unreasonable issuance of the summons, but upon the alleged fact that plaintiff was misled because the ASPCA employee never took the trouble to point out to her that the paper she was given when she requested a transfer of ownership was a summons. Plaintiff, in her deposition, testified that she went to the ASPCA to inquire as to what had to be done with respect to the name and registration of the dog. Ms. Silverstein told her she would have to make a new application and handed her a paper, which plaintiff says she put away without reading it. Under those circumstances a question arises as to whether the clerk acted reasonably in a context in which plaintiff may have been led to believe she was receiving an application form, and *549 whether she should have pointed out that this was a summons, that plaintiff was required to appear in court to respond, and that failure to appear would result in a warrant for her arrest.
Plaintiff testified, and we must accept her assertion as true for the purposes of this motion, that she did not read the paper but put it away and was not aware that she was required to appear in criminal court to answer the charge of “harboring an unlicensed dog.” Not having been made aware that she was required to appear in court, under the circumstances here presented in which a reasonably prudent person might not suspect that she was being charged with a violation of law, it may well have been foreseeable that plaintiff might not appear in court and that a warrant would be issued for her appearance. It was the existence of this warrant for nonappearance after plaintiff’s initial mistaken arrest by the police for robbery which resulted in a more extended period of detention for the plaintiff. Thus, if the negligence alleged in the first cause of action is not the mistaken issuance of the summons, but the failure under the circumstances to make known that it" was a summons with appearance required, the fact that there were, by literal construction, grounds for its issuance and that plaintiff pleaded guilty does not bar her from contending that the warrant which resulted in her detention would not have been issued if defendants had acted properly. Adopting a dog and asking about reregistration do not ordinarily cause a period of imprisonment.
The third cause of action charges that the defendants unconstitutionally violated plaintiff’s civil rights under color of law, creating a right of recovery under section 1983 of title 42 of the United States Code. The fact that plaintiff, for purposes of expediency, may have pleaded guilty to the underlying criminal prosecution, would not be a bar to a section 1983 recovery. Section 1983 provides: “Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured *550 in an action at law, suit in equity, or other proper proceeding for redress.”
If defendants, acting under color of law, improperly issued a summons to the plaintiff and improperly failed to give her adequate notice of her possibly being subjected to criminal penalties resulting in her being deprived of her liberty, a cognizable action under section 1983 is set forth, even though she might be barred from recovery for the traditional tort of malicious prosecution. “Section 1983 has become a vehicle for redressing rapidly expanding classes of constitutional wrongs for which remedy traditionally could not be had. For example, an action for damages may arise from the threatened eviction from publicly subsidized housing as a consequence of an individual’s activities in a tenant association (Davis v Village Park II Realty Co., 578 F2d 461) or from the stigma attaching to one not afforded a proper hearing in the context of an employment dismissal. (Quinn v Syracuse Model Neighborhood Corp., 613 F2d 438) * * * the statute is designed to provide relief where the State law is inadequate in theory or in practice.” (Pitt v City of New York, 111 Misc 2d 569, 573.)
In Smith v County of Livingston (69 AD2d 993, 994), plaintiffs had been criminally charged with “endangering the welfare of a child” where seven girls under the age of 17 were served beer at the plaintiffs’ residence during a birthday and slumber party, ostensibly without the permission, consent or knowledge of the plaintiffs. The court held there could be no cause of action for malicious prosecution, since there was no malice. A claim under section 1983, alleged as an alternative cause of action, was there dismissed, but only on the ground that a municipality could not be held liable under section 1983 on a respondeat superior theory. While the municipality could not be held liable, a nongovernmental defendant such as the ASPCA and an individual could be found liable in the event their actions under color of law resulted in a deprivation of constitutional rights. Even a municipality will be held liable if the employee is carrying out official policy. It is basic that every person must be put on notice that he or she is charged with a violation of law and given adequate opportunity to appear and defend.
*551 Singleton v City of New York (632 F2d 185, cert den 450 US 920) is cited by defendant in support of the proposition that a section 1983 action based on an allegedly improper criminal proceeding could not stand if the underlying criminal prosecution failed to terminate favorably to plaintiff. But the fact that plaintiff may have pleaded guilty to a minor charge for the sake of expediency should not preclude her from showing that the entire process was unfair and resulted in an essential denial of due process. Fair v City of Rochester (84 AD2d 908) was a Fourth Department case in which a section 1983 complaint for willful arrest and prosecution and violation of civil rights was dismissed. The court there, improperly I believe, equated the requirements of the section 1983 action with the requirements for malicious prosecution. If the requirements are, in fact, identical, there would be no basis for a separate section 1983 action when the traditional tort remedy exists. Section 1983 permits a claim where the traditional remedy is unavailable. In any event, the complaint here is not merely that there was an improper prosecution, but that plaintiff was deprived of her liberty because, even if the criminal charges had been properly brought and the proceeding was terminated adversely to her, she would not have had an outstanding warrant against her and would not have been detained in a cell by the police if she had not been misled and deluded as to the nature of the “pink slip” she was given by the agent for the ASPCA.
Accordingly, this court finds that viable causes of action for negligence and deprivation of civil rights have been set forth and that issues are posed for resolution at trial. The motion for summary judgment should be denied.

. These chapters apply only to the City of New York. With respect to dog licensing in the rest of the State, section 106 of the Agriculture and Markets Law applies.

. Interestingly, on the very same day that the Second Department decided there can be no cause of action for negligent prosecution, it held in Saunsen v State of New York (81 AD2d 252, 254) that the failure of nonjudicial employees of a court to recall an arrest warrant mistakenly issued but valid on its face, as a result of which, plaintiff was detained by the police, would not give rise to an action for false arrest but could sustain a claim of negligence, which would be left for proper determination at trial.