George **BERNSTEIN, acting for and on Behalf of the COMMISSIONER OF BANKING AND INSURANCE OF The STATE OF VERMONT as Receiver for the purpose of rehabilitation of Ambassador Insurance Company and James P. Corcoran, Superintendent of Insurance of the State of New York as Rehabilitator of Horizon Insurance Company, Plaintiffs,**

v.

**CENTAUR INSURANCE COMPANY, Defendant.**

**No. 83 Civ. 7989 (JMC).**

United States District Court, S.D. New York.

Nov. 28, 1984.

Kroll, Pomerantz & Cameron, New York City (Elliott M. Kroll, New York City, of counsel), for plaintiff George Bernstein.

Stroock & Stroock & Lavan, New York City (Thomas Farber, New York City, of counsel), for plaintiff James P. Corcoran.

Cabell, Kennedy & French, New York City (T. Richard Kennedy, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Defendant's motion to dismiss the seventh cause of action is granted. Fed.R. Civ.P. 12(b)(6).

Defendant's motion to stay this action pending arbitration is granted in part and denied in part pending submission of supplemental affidavits. 9 U.S.C. § 3.

## BACKGROUND

This diversity action was brought by Ambassador Insurance Company ["Ambassador"] and Horizon Insurance Company ["Horizon"].[1] On November 10, 1983, the Superior Court of the state of Vermont declared Ambassador insolvent and appointed the Commissioner of Banking and Insurance of Vermont as rehabilitator. On December 7, 1983, the Supreme Court of the State of New York declared Horizon insolvent and appointed the Superintendent of Insurance of New York as rehabilitator.[2] On January 31, 1984, the current plaintiffs, acting on behalf of the rehabilitators of Ambassador and Horizon, were substituted as plaintiffs.[3]

Ambassador alleges seven causes of action based upon certain reinsurance agreements between defendant Centaur Insurance Co. ["Centaur"] as reinsurer and plaintiffs as reinsured. Horizon joins in only the sixth and seventh claims. The first six claims allege nonpayment of amounts due under the agreements and seek damages, an accounting and a declaration of rights. The seventh cause of action alleges that defendant's actions were "willful, deliberate, without reasonable or probable cause and in bad faith," for which plaintiffs demand ten million dollars in damages.

Defendant has moved to dismiss plaintiffs' seventh cause of action on the grounds that it fails to state an independent cause of action and is in fact merely a request for punitive damages, which are not available in a contract action absent willful or malicious fraud.

Defendant also moves to stay the action pending arbitration. It is undisputed that all the reinsurance agreements at issue contain a clause providing: "Any difference of opinion between the Reinsurer and the Company with respect to the interpretation of this certificate or the performance of the obligations under the certificate shall be submitted to arbitration."[4]

## DISCUSSION

### 1. *Motion to Dismiss*

■■■ Defendant's motion to dismiss is granted. There is no independent cause of action for punitive damages in New York. *See Weir Metro Ambu-Service v. Turner,* 57 N.Y.2d 911, 456 N.Y.S.2d 757, 442 N.E.2d 1268 (1982); *Bradshaw v. Silversmith,* 122 Misc.2d 544, 546, 472 N.Y.S.2d 237, 239 (N.Y.App.Term 1983). Moreover, even if the Court were to construe the complaint liberally and interpret the seventh cause of action as a demand for punitive damages, the demand would fail. Punitive damages are not permitted in a breach of contract action in New York absent "fraud 'aimed at the public generally', evincing a 'high degree of moral turpitude', and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Durham Indus. v. North River Ins. Co.,* 673 F.2d 37, 41 (2d Cir.1982) (*quoting Walker v. Sheldon,* 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497, 500 (1961)), *cert. denied,* 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1983). *See also Brink's Inc. v. City of New York,* 717 F.2d 700, 704 (2d Cir.1983) (punitive damages unavailable under New York law even for deliberate breach of good faith); *Kaufman v. Chase Manhattan Bank,* 581 F.Supp. 350, 357 (S.D.N.Y.1984) (no punitive damages permitted when investment fraud not aimed at investing public; no moral turpitude or wanton dishonesty); *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 833, 353 N.E.2d 793, 795 (1976) (punitive damages in contract action available only upon showing of public wrong); *Borkowski v. Borkowski,* 39 N.Y.2d 982, 982, 387 N.Y.S.2d 233, 233, 355 N.E.2d 287, 287 (1976) (punitive dam-

---

**1.** Complaint, 83 Civ. 7989 (JMC) (filed Nov. 2, 1983).

**2.** Affidavit of John V. Henry at 2, 83 Civ. 7989 (JMC) (filed Apr. 4, 1984) [hereinafter "Henry Affidavit"].

**3.** Stipulation and Order of Substitution, 83 Civ. 7989 (JMC) (S.D.N.Y. Feb. 16, 1984).

**4.** Henry Affidavit, Exh. H.

ages may be awarded in case of gross and wanton fraud even absent allegations of public wrong).

■ Plaintiffs have not alleged any fraud and can suggest no greater public wrong than their own inability to pay the claims of their insured as a result of defendant's breach. This is not the kind of wrong to the public that requires exemplary damages. *See Walker v. Sheldon*, 10 N.Y.2d at 404, 223 N.Y.S.2d at 490, 179 N.E.2d at 499 (primary purpose of exemplary damages is to encourage victims to bring suit when they might have been hesitant to appear in a criminal trial against the wrongdoer).

**2.** *Motion for Stay*

Defendant's motion to stay pending arbitration is founded upon section 3 of the Federal Arbitration Act ["Arbitration Act"].[5] Plaintiffs do not dispute the existence of the arbitration clause or its validity. They oppose the stay on three grounds: (1) New York law precludes arbitration of suits involving insurance companies under rehabilitation; (2) the validity and existence of the reinsurance certificates is an issue for the court; and (3) there exists no arbitrable dispute because defendant has not contested its liability under the certificates.

The first of these arguments is put forward by Horizon and involves only that company. Horizon does not deny that ordinarily the Arbitration Act would preempt state law governing arbitrability of matters in interstate commerce. *Id.* §§ 1, 3; *see Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (state cannot create exception to the Arbitration Act). Nor does it dispute that insurance is business in interstate commerce. *See United States v. South-Eastern Ass'n,*

322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Plaintiff's argument is founded upon section 2(b) of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), which provides:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance....

*Id.*

■ The McCarran-Ferguson Act exempts from federal law only those state regulations that specifically regulate the "business of insurance", *see Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), and only to the extent that a federal statute would "invalidate, impair or supersede" state laws. 15 U.S.C. § 1012(b); *see Miller v. National Fidelity Life Ins. Co.* 588 F.2d 185, 187 (5th Cir.1979); *Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.*, 408 F.2d 606, 611 (2d Cir.1969). Moreover, despite defendant's argument to the contrary, the McCarran-Ferguson Act by its own terms exempts state law from the supremacy of federal law only when the federal law does not specifically address the insurance business. 15 U.S.C. § 1012(b); *see Hanover Ins. Co. v. Commissioner*, 598 F.2d 1211, 1218 (1st Cir.) *cert. denied*, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979).

The Arbitration Act does not specifically address the insurance business. *See* 9 U.S.C. § 3. The Court assumes, therefore, without deciding, that Congress did not intend the Arbitration Act to be excluded from the scope of the McCarran-Ferguson Act.[6] Thus, if New York has a law that

---

**5.** If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accord-

ance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
9 U.S.C. § 3.

**6.** The Second Circuit has found that the lack of an explicit reference to insurance in a federal law does not automatically place it within the McCarran-Ferguson Act. *See Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1063–67 (2d

specifically prohibits arbitration in disputes involving the insurance business, arbitration may be precluded in this case.

Plaintiff does not suggest any individual section of the New York Insurance Law that specifically precludes arbitration. Instead, it is argued that New York case law has construed article XVI of the Insurance Law as prohibiting arbitration of claims brought by or against a rehabilitator of an insurance company.

The leading case, *In re Knickerbocker Agency, Inc. v. Holz,* 4 N.Y.2d 245, 173 N.Y.S.2d 602, 149 N.E.2d 885 (1958), held that, although there is no express statutory provision granting exclusive jurisdiction to the New York Supreme Court in claims brought by a liquidator, the "overall scheme and plan of article XVI" requires such a result. *Id.* at 252, 173 N.Y.S.2d at 608, 149 N.E.2d at 891. The court further reasoned that this implied grant of exclusive jurisdiction in the Supreme Court further implies a prohibition against arbitration of those claims. *Id.* The reason for this prohibition, the Court suggested, is that the interests of "creditors, policyholders, stockholders and the public" might be threatened by the fact that "[a]rbitrators do not have the benefit of judicial instruction on the law; they need not give reasons for their results; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award is more limited than judicial review of a trial." *Id.* at 253, 173 N.Y.S.2d at 609, 149 N.E.2d at 892. *See also In re All City Ins.*

*Co.,* 66 A.D.2d 531, 413 N.Y.S.2d 929 (1st Dep't 1979) (applying *Knickerbocker* to rehabilitation proceedings).

One federal district court has found that an identical state law in Oklahoma precludes federal jurisdiction once liquidation proceedings have begun. *See Professional Constr. Consultants Inc. v. Grimes,* 552 F.Supp. 539, 541–43 (W.D.Okla.1982). That Court relied upon the Supreme Court decision in *United States v. Bank of New York & Trust,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1963), which held that where the subject matter of a federal suit is a *res* in the control of a state court, the federal court should decline jurisdiction in favor of state court proceedings that can more completely and equitably resolve the issues as to all parties. *Id.* at 477–80, 56 S.Ct. at 347–48. The *Grimes* court reasoned that the assets of an insurance company in liquidation proceedings constituted such a *res* and therefore declined jurisdiction. 552 F.Supp. at 541–43.

In *Grimes,* the plaintiff was seeking damages from *defendant* insurance companies to be paid from assets then under liquidation proceedings. *Id.* By contrast, in *Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.,* 408 F.2d 606 (2d Cir. 1969), the Second Circuit rejected the claim that New York law precluded arbitration, after noting without discussion that *plaintiff* insurance company was under supervision of the New York State Insurance Department due to financial difficulty.[7] *But*

Cir.1982) (Congress never intended to remove insurance business from the scope of federal civil rights laws), *vacated on other grounds,* —— U.S. ——, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983), *reinstated as modified on other grounds,* 735 F.2d 23 (2d Cir.1984). Because the Court finds that in this case no state law was impaired, invalidated or superseded, it does not reach the broader question of whether the Arbitration Act would have to be disregarded in favor of an appropriate state law. *See Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.,* 408 F.2d 606, 611 (2d Cir.1969) (same result).

**7.** One district court case seems to contradict the holding of *Hamilton. See Skandia Am. Reins. Corp. v. Schenck,* 441 F.Supp. 715, 723 & n. 11 (S.D.N.Y.1977). *Skandia* involved an inter-

pleader action in which plaintiff stakeholders sought clarification of their obligations with respect to two parties, each of whom claimed the right to funds originally owed to a New York insurance company then under liquidation. *Id.* at 718. One of the defendants was the Superintendent of Insurance of the State of New York, appearing as liquidator of the New York insurance company. *Id.* Thus, as in *Hamilton,* the *res* under dispute was in the hands of companies not under liquidation and which would have been defendants in a non-interpleader action. Nonetheless, the Court stated, with no discussion and no reference to *Hamilton,* that "[o]nce a New York insurer is placed in liquidation, it may not be compelled to arbitrate." *Id.* at 723 n. 11. Again without discussion, the Court in *Skandia,* unlike the *Grimes* court re-

*see Skandia Am. Reins. Corp. v. Schenck*, 441 F.Supp. 715, 723 & n. 11 (S.D.N.Y.1977) (dicta) (noting without discussion that "[o]nce a New York insurer is placed in liquidation, it may not be compelled to arbitrate," but retaining jurisdiction, also without discussion).

In the instant case, unlike *Grimes*, plaintiff, not defendant, is the holder of the *res* under supervision by the state department of insurance, and independent federal diversity jurisdiction is present. *See Grimes*, 552 F.Supp. at 542 (plaintiffs "have scarcely presented the Court with any basis for jurisdiction"). Moreover, unlike *Knickerbocker*, defendant in this case is a nonresident. *See Knickerbocker*, 4 N.Y.2d at 254, 173 N.Y.S.2d at 610, 149 N.E.2d at 893. Neither of the parties has claimed that this case is under the exclusive jurisdiction of the New York State Supreme Court, nor that this Court should exercise its discretion to decline jurisdiction in favor of state court proceedings.

In summary, no state law explicitly precludes arbitration of insurance cases and the case law inferring such a rule does so with reference to cases brought within the jurisdiction of the state Supreme Court. Because this case is not within the exclusive jurisdiction of the state Supreme Court and is not one brought under article XVI of the New York Insurance Law, it is not governed by *Knickerbocker*. It may be that New York's policy against arbitrating this kind of suit weighs against enforcement of the arbitration clause, but the McCarran-Ferguson Act exempts state practices from preemption only if a state's *law* would be invalidated, impaired, or superseded. *See* 15 U.S.C. § 1012(b). It does not stretch the exception to include state *policies* for which no specific law is enacted. *See Miller v. National Fidelity Life Ins. Co.*, 588 F.2d 185, 187 (5th Cir.1979)

(state regulations of insurance business generally do not trigger McCarran-Ferguson Act where no specific state law would be impaired, invalidated or superseded).

Plaintiffs next argue that the validity and existence of a contract is a threshold issue that must be decided by the Court. It is true that the existence of an agreement to arbitrate is an issue for the Court. *See* 9 U.S.C. § 4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403, 84 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967); *Sun Int'l Ltd. v. Terrabo Petroleum Co.*, 747 F.2d 108, 110 (2d Cir.1984). However, it is also true that the arbitration clause is separable from the contract so that if there is no dispute as to the existence and scope of the arbitration clause, the arbitrators will be permitted to decide whether the contract generally is invalidated by, for example, fraud in the inducement. *See Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. at 1805–06; *S.A. Mineracao da Trinidade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984).

The dispute as to the validity and existence of certain of the reinsurance contracts at issue in this case is so unclear that the Court is unable to make a determination as to arbitrability. Two areas of dispute seem to be present: Defendant argues (1) that the agreements numbered CF–719 and CF–720 are invalid and unenforceable and (2) that agreements numbered CF–757 and CF–758 extended from October 1, 1981 through October 1, 1982[8] rather than October 1, 1981 through October 1, 1983 as claimed by the plaintiff.

Defendant has made no explanation of its grounds for doubting the validity of CF–719 and CF–720 and, in bringing this motion, is in fact relying upon the arbitration clauses in those two certificates. Thus it is impossible to determine whether the

---

tained jurisdiction despite its reliance upon *Knickerbocker*, which based its ruling against arbitration on the fact that the Supreme Court of New York had been granted exclusive jurisdiction. The brevity of the *Skandia* treatment

of this hazy issue suggests that the parties did not request a stay pending arbitration.

**8.** Henry Affidavit, Exhs. F & G.

dispute goes to the existence of a contract containing an arbitration clause, which would be a question for the Court, or some question of fraud or interpretation that must be turned over to an arbitrator. Similarly, it is unclear whether the plaintiffs contend that the CF–757 and CF–758 certificates incorrectly state the term of those agreements or that there exists an additional pair of certificates covering the 1982–1983 period. The former argument would probably require the Court to issue a stay pending arbitration, *see Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 886 (2d Cir.1982), while the latter would present a threshold question for the Court.

Because of the lack of clarity in these disputes, the Court denies defendant's motion for a stay pending arbitration insofar as it concerns certificates CF–719–20 and 757–58 and directs the parties to submit supplementary affidavits clarifying this issue within fifteen days of the date of this Memorandum and Order.

■ Plaintiffs' final argument, that no arbitrable dispute exists, is frivolous. There is no allegation that the disputes between the parties fall outside the arbitration agreements. Instead, Bernstein tries to argue that there is no dispute at all. In fact, defendant disputes the amounts owed under the agreements and the validity and term of some of the agreements. Clearly, there is a dispute to be submitted to arbitration.

### CONCLUSION

In accordance with the foregoing, the defendant's motion to dismiss the seventh cause of action is granted. Fed.R.Civ.P. 12(b)(6).

Defendant's motion to stay the action pending arbitration is granted in part and denied in part pending submission of supplemental affidavits within fifteen days. 9 U.S.C. § 3.

SO ORDERED.