The **ROYAL SOCIETY OF MEDICINE, Plaintiff,**

v.

**INTERNATIONAL SOCIETY FOR PREVENTIVE ONCOLOGY, INC. a/k/a International Symposium For Detection and Prevention of Cancer, Inc., and Herbert E. Nieburgs, Defendants.**

**No. 82 Civ. 6903 (LFM).**

United States District Court, S.D. New York.

Feb. 19, 1985.

Lynch, Rowin, Burnbaum & Crystal, by Howard C. Crystal, New York City, for plaintiff.

Stephen Latzman, New York City, for defendants.

## OPINION

MacMAHON, District Judge.

Plaintiff, The Royal Society of Medicine ("RSM"), moves for summary judgment

against defendant, International Society for Preventive Oncology, Inc. ("ISPO"), on its second, third and fifth causes of action. Plaintiff also moves to dismiss defendants' counterclaims. Defendants oppose plaintiff's motion for summary judgment and cross-move for summary judgment dismissing plaintiff's complaint against defendant Herbert E. Nieburgs ("Nieburgs") and plaintiff's fifth cause of action.

## FACTS

This action is based on a contract signed by the parties in March 1979. In the fall of 1977, plaintiff entered into an agreement to sponsor the Fourth Symposium on the Detection and Prevention of Cancer ("symposium"), to be held in London in July 1980, with the International Study Group for the Detection and Prevention of Cancer ("DepCa"), a non-profit medical society organized under the laws of Belgium. Defendant Nieburgs served as president of DepCa in 1977.

Plaintiff agreed to organize the symposium and to guarantee a loan for £20,000 as seed money. The agreement also provided that the loan was without risk and would be repaid at periodic intervals. Due to lack of sponsorship by other organizations, however, plans for the symposium were put on hold at the November 1978 meeting of the Symposium Organizing Committee, which Nieburgs attended.

In March 1979, plaintiff entered into a new agreement regarding the organizing of the symposium, which substituted the International Symposium for Detection and Prevention of Cancer, Inc. ("ISDPC") for DepCa. ISDPC, a separate corporation formed to organize symposia, later changed its name to ISPO. In pertinent part, the March 1979 agreement provided that ISPO:

3. Agrees that repayment of the money already lent by the RSM (plaintiff) beyond £20,000 (as shown at Appendix A), plus interest, will be a first call on registration fees as received and that the said £20,000 shall be repaid to the RSM within four weeks of the termination of the Symposium.

4. Agrees that any profits from the Symposium will be shared with the RSM on the basis of 75% to ISDPC (ISPO) and 25% to RSM.

Defendants have paid plaintiff for amounts due over £20,000 but have not repaid the original loan. Plaintiff alleges that, in further violation of the March 1979 agreement, defendants have failed to provide plaintiff with an accounting and percentage of the profits. In addition, in July 1980, plaintiff arranged a symposium dinner at a cost of £1,500, which plaintiff alleges defendants agreed but have failed to pay.

## DISCUSSION

### Plaintiff's Second Cause of Action

Plaintiff moves for summary judgment on its second cause of action which alleges that, under the March 1979 agreement, defendants were required, but have failed, to repay plaintiff £20,000 within four weeks of the symposium.

■ Defendants contend that they were assured of and expected to receive invoices for plaintiff's expenditures before reimbursement and would not have signed the agreement if they had known that invoices were unavailable. They also assert that the term "provisional" in Appendix A signifies that the amount to be paid was subject to verification which plaintiff has failed to provide. Finally, defendants contend that the agreement was executed in reliance on a chart distributed at the November 1978 meeting, which falsely aggrandized the number of expected attendants. They claim that the chart showed that the total number of persons interested in the symposium was 1,255.

Defendants do not dispute that money is owed, but rather claim that the amount should be verified before it is paid. The document, however, is unambiguous and subject to only one interpretation. *Security Options Corp. v. Devilliers Nuclear Corp.*, 472 F.2d 844, 846 (2d Cir.1972). The

agreement clearly provides that defendants were to repay plaintiff the £20,000 loan within four weeks after the symposium. The agreement is silent as to providing invoices. Any assurance in various letters by plaintiff to supply invoices was merely to accommodate defendants' accounting procedures, not because such documentation was required by the March agreement. The term "provisional" relates to the expenditures over the original £20,000, not to the £20,000 itself.

Finally, a proper reading of the chart shows that plaintiff did not misrepresent the number of persons expected to attend the symposium. The chart establishes that the total number of inquiries made equalled 1,255, while the expected number of attendants was 399.

We find that the agreement unequivocally required defendants to repay the £20,000 loan within four weeks of the symposium. Defendants' affirmative defenses and counterclaims, all derived from the same factual basis, are insufficient to alter this result and are dismissed based on the following discussion.

Defendants claim that they signed the March 1979 agreement under coercion or duress and that plaintiff unlawfully or maliciously interfered with the symposium. They also counterclaim that they were induced to enter into the March 1979 agreement by plaintiff's misrepresentations and that plaintiff breached the agreement by failing to comply with its terms and conditions. These allegations rest on the same alleged factual basis, *i.e.*, that plaintiff withdrew from organizing the symposium in November 1979, attempted to organize its own symposium, and solicited support for it from potential participants.

To establish the defense of economic duress, defendants must demonstrate that the agreement was obtained: (1) by means of a wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative. *Union State Bank v. Weaver*, 526 F.Supp. 29, 33 (S.D.N.Y.1981). The prima

facie tort of malicious interference is established by proof of intentional infliction of harm, resulting in damages, without excuse or justification, by an act or series of acts that would otherwise be lawful. *Ann-Margret v. High Society Magazine*, 498 F.Supp. 401, 408 (S.D.N.Y.1980); *Sommer v. Kaufman*, 59 A.D.2d 843, 399 N.Y.S.2d 7 (1st Dept.1977).

Defendants have not shown facts to establish these defenses. They may not rest on mere conclusory allegations to obtain a trial. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

Contrary to defendants' allegations, the uncontroverted facts show that plaintiff did not withdraw from organizing the symposium in November 1978. It was agreed by all present at the meetings, including Nieburgs, that it was impractical to proceed with plans without the support of other medical societies and that the organizing of the symposium should be temporarily halted. It was also agreed that members of the symposium committees not present would be advised of the situation. When the planning resumed, plaintiff did support and assist with the organization of the symposium. Defendants have not shown that plaintiff made false representations to defendants of its intentions with regard to the agreement.

Defendants' second counterclaim alleges that, by withdrawing from the symposium, plaintiff breached the fall 1977 agreement. Plaintiff correctly points out that the fall 1977 agreement was executed between itself and DepCa and not with the instant defendants. This counterclaim is dismissed for a lack of standing.

Since there are no factual issues in dispute, we grant plaintiff's motion for summary judgment on its second cause of action. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Heyman v. Commerce And Industry Ins. Co.*, 524 F.2d 1317 (2d Cir.1975).

*Plaintiff's Third Cause of Action*

Plaintiff's third cause of action alleges that plaintiff advanced £1,500 for a sympo-

sium dinner in July 1980 with the understanding that defendants would reimburse it. Defendants have failed to respond to plaintiff's claim, conceding liability. Rule 56(e), Fed.R.Civ.P. "Plaintiff's assertions cannot be attenuated by defendants' lack of opposition. Defendants must actively parry plaintiff's thrust." *Warner-Lambert Pharmaceutical Co. v. Sylk*, 53 F.R.D. 206, 208 (E.D.Pa.1971). Since there is no showing as to the existence of a material fact in dispute, plaintiff's motion for summary judgment on the third cause of action is granted.

*Plaintiff's Fifth Cause of Action*

 Plaintiff's fifth cause of action seeks an accounting of the profits earned at the symposium based on the March 1979 agreement which provided that plaintiff would receive 25% of the profits. Defendants claim, however, that the symposium did not earn a profit and that plaintiff has been provided with a full accounting of the financial aspects of the symposium. Defendants seek dismissal of this cause of action. Insofar as defendants seek to attack plaintiff's claim by proving matters outside the face of the pleading, the motion becomes one for summary judgment under Rules 12(b)(6) and 56, Fed.R.Civ.P.

Despite defendants' submission of a summary statement of disbursements and receipts from the symposium, material issues are raised as to the accuracy and completeness of this statement. Since neither party has properly demonstrated the absence of a genuine issue of fact in dispute, summary judgment is denied to both parties on this claim. *Adickes, supra; Heyman, supra.*

*Dismissal of Complaint Against Nieburgs*

Defendants argue that the entire complaint should be dismissed as to Nieburgs because he was acting in his official corporate capacity, first as president of DepCa in making the fall 1977 agreement, and then as president of ISPO in making the March 1979 agreement. Plaintiff counters, however, that summary judgment should not be granted on this issue and Nieburgs should be held liable individually because he acted without authority in con-

tracting with plaintiff. Plaintiff contends that Nieburgs signed the March 1979 agreement without informing or receiving authorization from the ISPO board and failed to request confirmation for the fall 1977 agreement from the DepCa board as required by the two corporations' by-laws.

Sufficient issues of fact are raised here to deny defendants' motion for dismissal of plaintiff's claim as to defendant Nieburgs.

Defendants also move to dismiss the first cause of action for fraud against Nieburgs, claiming that plaintiff has failed to show sufficient facts to establish a misrepresentation of a material fact and an intent to deceive. An inquiry into allegations of fraud "necessarily involves a dispute concerning state of mind and conflicting interpretations of perceived events." *Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir.1977). Summary judgment, therefore, is not a proper vehicle for resolution of this factual dispute.

Accordingly, plaintiff's motion for summary judgment on its second and third causes of action is granted. Plaintiff's motion to dismiss all four of defendants' counterclaims is also granted. All other motions made by either party are denied.

Settle judgment within ten (10) days.