For the reasons set forth above, defendant's motions are denied.

SO ORDERED.

Jon Gordon NELSON, Plaintiff,

v.

STANLEY BLACKER, INC., Defendant.

No. 88 Civ. 2525 (PKL).

United States District Court,
S.D. New York.

May 23, 1989.

J.D. Welsh & Associates, New York City (Frances M. Saieva, of counsel), for plaintiff.

Levy, Sonet & Siegel, New York City (Stephen B. Schulman, of counsel), for defendant.

## OPINION & ORDER

LEISURE, District Judge:

Plaintiff Jon Gordon Nelson ("Nelson") brings this action against his former employer Stanley Blacker, Inc. ("Blacker") for breach of a contract of employment. Plaintiff has asserted a claim for breach of contract, unjust enrichment, two weeks vacation pay and punitive damages. This action is currently before the Court on defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

## FACTUAL BACKGROUND

As a result of prior negotiations, Nelson entered into a written employment agreement dated April 18, 1986 (the "Agreement") with defendant Blacker. This Agreement set forth the terms of Nelson's employment by Blacker as Vice–President of Stanley Blacker Sportswear. Plaintiff was to be paid a base salary plus "incentive compensation," of at least $10,000. Affidavit of Jon Gordon Nelson, sworn to on March 16, 1989, ("Nelson Affidavit"), Exhibit A. The Agreement contained a provision relating to termination which stated, in relevant part, that plaintiff's employment could be terminated by either party "for any reason upon sixty (60) days' written notice, or by [Blacker] upon one (1) days' written notice to [plaintiff] for cause...." *Id.*

On or about September 28, 1987, plaintiff was notified by Jack Neff ("Neff"), Executive Vice–President of Blacker, that his employment by Blacker was terminated upon one day's notice. Plaintiff received a confirming letter of the termination. Nelson Affidavit, Exhibit B. Plaintiff was never notified of the basis for the invocation of the "for cause" provision. Despite the termination, plaintiff allegedly continued to work for Blacker for approximately two to three weeks, in order to complete outstanding business projects.

On or about October 16, 1987, Nelson executed a Receipt and Release (the "Release"), in which he acknowledged receipt of the sum of $3,406.35, and amounts to be paid on October 23, 1987, and October 30, 1987, each in the sum of $1,014.54. The release stated that this payment was "full and complete payment of any and all claims pursuant to that letter agreement dated April 18, 1986...." Nelson Affidavit, Exhibit D. Plaintiff contends that initially, he refused to sign the release, and only signed it because he was told that he would not

receive the monies due him until the Release was executed. Plaintiff negotiated all checks referred to in the Release.

On April 8, 1988, plaintiff commenced this action to recover damages as a result of Blacker's alleged breach of contract on theories of breach of contract, unjust enrichment, accrued vacation pay and punitive damages.

## DISCUSSION

### Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... [i]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must determine whether there does indeed exist a genuine issue as to any material fact; "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, 477 U.S. at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102 (2d Cir.1989). The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554.

Once a motion for summary judgment is properly made, the burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511. Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," *id.*—the nonmoving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986) (citations omitted).

### BREACH OF CONTRACT

Plaintiff's first cause of action is for breach of the written Agreement. Defendant contends that the Release signed by plaintiff bars this claim for breach of contract. In response, plaintiff asserts that the Release is voidable as it was signed under duress. Specifically, plaintiff alleges that he signed the Release only after he was advised by Jack Neff, Executive Vice-President of Blacker, that he would not receive any of the checks recited therein unless the Release was executed. Plaintiff asserts he was confronted with a serious economic difficulty due to Blacker's allegedly improper action and therefore was compelled to agree to Blacker's demand. At the time Nelson signed the release, he stated to Neff that he was signing "under duress." Nelson Affidavit ¶ 23. Allegedly, plaintiff purposely altered his signature on the Release in an attempt to evidence his state of mind at the time of execution. Plaintiff's Memorandum of Law in Opposition ("Plaintiff's Memorandum") at 12.

A contract executed under duress is not void but merely voidable. *See DiRose v. PK Management Corp.*, 691 F.2d 628, 633–34 (2d Cir.1982), *cert. denied*, 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *Citibank, N.A. v. Real Coffee Trading Co.*, 566 F.Supp. 1158, 1163 (S.D.N.Y.1983). Duress exists where there is a wrongful act depriving another of the exercise of his free will. *Printers II v. Professionals Publishing, Inc.*, 615 F.Supp. 767 (S.D.N.Y.1985), *aff'd*, 784 F.2d 141 (2d Cir.1986); *Stewart M. Muller Construction Co. v. New York Telephone Co.*, 40 N.Y.2d 955, 390 N.Y. S.2d 817, 359 N.E.2d 328 (1976). To establish economic duress a plaintiff must demonstrate that the agreement was obtained: (1) by means of a wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative. *Royal Society of Medicine v. International Society for Preventive Oncology, Inc.*, 602 F.Supp. 794 (S.D.N.Y.1985). In order to prevail on a claim of duress, plaintiff must show, *inter alia*, that he had available no legal remedies to avoid the duress, *Durante Bros. and Sons, Inc. v. Flushing National Bank*, 755 F.2d 239, 251 (2d Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *Neuman v. Pike*, 591 F.2d 191, 194 (2d Cir.1979); *First National Bank of Cincinnati v. Pepper*, 454 F.2d 626, 633–34 (2d Cir.1972), and that he acted promptly to repudiate the contract. *Scientific Holding Co. v. Plessey, Inc.*, 510 F.2d 15, 23 (2d Cir.1974). "A threatened breach of contract for which there are adequate legal remedies does not constitute duress." *Neuman v. Pike*, 591 F.2d at 194.

Although a claim of duress usually requires a determination of a party's state of mind which would preclude summary judgment, *see Citibank, N.A. v. Real Coffee Trading Co., N.V.*, 566 F.Supp. 1158 (S.D.N.Y.1983), in the present case, plaintiff's claim of duress is insufficient as a matter of law. Plaintiff has not demonstrated that he had no legal remedies available to avoid the alleged duress. *See Durante Bros. and Sons, Inc., supra,* 755 F.2d at 251; *Neuman, supra,* 591 F.2d at 194; *First National Bank of Cincinnati,* 454 F.2d at 633. Under New York law, a party may not prevail on an economic duress claim unless the party demonstrates that a breach of contract action would have been impossible when the threat was made. *Gulf & Western Corp. v. Craftique Productions, Inc.*, 523 F.Supp. 603 (S.D.N.Y. 1981).

In the case at bar, Nelson has not even made the bare allegation that he had no available legal remedies, or that a breach of contract action was impossible when the Release was executed. In fact, Nelson stated that he intended to bring a legal action against Blacker and therefore requested time to confer with his attorneys before signing the Release. Nelson Affidavit ¶ 20. Plaintiff has offered no reason why a breach of contract action was unavailable. Undoubtedly, he could have resorted to legal process to enforce the agreement that he now claims was breached. Accordingly, plaintiff's claim that the Release is voidable due to duress is without merit.[1] Plaintiff's claim for breach of the Agreement is therefore barred, and summary judgment is granted for defendant on plaintiff's first cause of action.

## UNJUST ENRICHMENT

Plaintiff's second cause of action is for unjust enrichment. It is unclear, however, exactly which services plaintiff seeks compensation for, and whether these are pursued under the theory of unjust enrichment, or breach of an oral agreement. In the Complaint, plaintiff asserts a claim for unjust enrichment, although it is not specified whether this is for services rendered

---

[1] Plaintiff additionally asserts that the Release is unenforceable as it is not supported by valid consideration. Plaintiff's Memorandum at 8. However, New York General Obligations Law § 15–303 provides, in relevant part, as follows:

A written instrument which purports to be a total or partial release of all claims, debts, demands or obligations ... shall be invalid because of the absence of consideration or of a seal....

Accordingly, even if the Release is unsupported by valid consideration, it is nevertheless enforceable.

prior to; or, subsequent to, the termination of the written Agreement. In his brief, however, plaintiff apparently abandons the claim for unjust enrichment contending that on or about the date of his termination, he entered into an oral agreement with defendant wherein he would remain in his capacity as Vice President of Stanley Blacker Sportswear for an additional two to three week period so as to facilitate the conclusion of certain outstanding business. Allegedly, plaintiff was to receive both regular and incentive compensation during that period. Plaintiff's Memorandum at 15.

The only proof of this oral contract, or plaintiff's claim for unjust enrichment, is the following testimony by plaintiff, submitted by defendant:

A: I said, I would like to tell you I have about 14 or 15 projects I am working on to get bookings in. I would like to complete those and get that business in before I leave. I don't want to leave too many loose ends.

He said, I really appreciate that. You are welcome to use the office, the phone or whatever. I said fine, I have about 14 or 15 other projects or customers I am trying to get their business in for the season; and he said great, I appreciate that.

Q: Anything else said between you?

A: No.

Nelson Deposition at 150, attached as Exhibit L to Affirmation of Stephen B. Schulman, Esq., dated March 24, 1989.

■ Turning first to plaintiff's claim sounding in *quasi* contract for services rendered prior to plaintiff's termination, the Court notes that the existence of a valid and enforceable written contract governing the subject matter in issue ordinarily precludes recovery in *quasi* contract. *See, e.g., Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). For a *quasi* contract is not really a contract, but rather a legal obligation imposed in order to prevent a party's unjust enrichment, and only applies in the absence of an express agreement. *Id. See also, Yonkers v. Otis*

*Elevator Co.*, 844 F.2d 42 (2d Cir.1988). In other words, a *quasi*-contractual obligation is one imposed by law "where there has been no agreement or expression of assent, by word or act, on the part of either party involved." *Clark–Fitzpatrick, supra*, 521 N.Y.S.2d at 656, 516 N.E.2d at 193 (*quoting Bradkin v. Leverton*, 26 N.Y.2d 192, 196, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970)).

Here, it is undisputed that the relationship between the parties was defined by the written Agreement, fully detailing all applicable terms and conditions. Notwithstanding plaintiff's claim that defendant breached the contract, plaintiff having chosen to sue for breach of contract cannot assert a claim in *quasi* contract. *See, e.g., Beaumont Birch Co. v. Najjar Industries, Inc.*, 477 F.Supp. 970 (S.D.N.Y.1979). Therefore, to the extent plaintiff's *quasi*-contractual claim is based on services performed under the contract, it must fail.

■ Moreover, to the extent plaintiff's claim for unjust enrichment is based on the services allegedly rendered after the termination of the agreement, plaintiff has failed to bring forward any evidence on which a jury could find in his favor. Under New York law, a plaintiff seeking an equitable recovery based on unjust enrichment must first show that a benefit was conferred upon defendant, and then show that as between the two parties enrichment of defendant is unjust. *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257 (2d Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). Expenses of, or damages to, plaintiff do not necessarily constitute gain to a defendant in order to support a claim for unjust enrichment. *L. Fatato, Inc. v. Miller Brewing Co.*, 582 F.Supp. 1377 (S.D.N.Y.1984). Despite the fact that both sides have had pretrial discovery and an opportunity to produce evidence in support of their claims, Nelson offers nothing at this time to sustain his claim for unjust enrichment, aside from the allegation that services were rendered after the termination of the contract. From this, plaintiff asks that the jury be permitted to infer that plaintiff performed these services,

which benefitted defendant, and for which he should be reimbursed. This is insufficient to support a claim for services rendered "at the special instance and request" of defendant. *Birmingham Small Arms Co. v. Brooklyn Cycle, Inc.*, 408 F.Supp. 707, 716 (S.D.N.Y.1976). Additionally, there is no evidence that any benefit accrued to defendant as a result of these alleged services. Accordingly, plaintiff's claim for unjust enrichment based on services performed after the contract must fail.

■ The Court turns next to plaintiff's claim that an oral contract was entered into by the parties, subsequent to the termination of the written agreement, providing that plaintiff would continue in defendant's employ for an additional two to three week period. However, once again, no evidence, affidavits or proof of any kind has been produced to sustain counsel's belatedly advanced arguments. The most that has been produced has been the testimony of Nelson, again submitted by defendant, that Nelson "ha[d] about 14 or 15 projects [he was] working on to get bookings in [and] would like to complete those and get that business in before [leaving]." To this Stanley Blacker alleged responded, "I appreciate that" and offered plaintiff the use of the offices. No other details of the alleged agreement are specified. This lack of evidence is fatal to plaintiff's position on a motion for summary judgment. The fact that plaintiff may have rendered services is, of course, not chargeable to defendant unless Blacker specifically agreed to reimburse the same.

Accordingly, plaintiff's second cause of action must fail.

ACCRUED VACATION PAY

Plaintiff's third cause of action is for two weeks vacation pay allegedly accrued. It is undisputed that the written Agreement did not contain any provisions for paid vacation. Originally, plaintiff contended that defendant "had a formal corporate policy" which entitled him to two weeks paid vacation. Complaint ¶ 17. Plaintiff claimed that "[o]n or about April 7, 1986, he had extensive negotiations with Stanley Black-er himself wherein Plaintiff was told by Mr. Blacker that he would receive two (2) [sic] paid vacation per annum." Complaint ¶ 18.

Subsequently, plaintiff testified that he learned of this "formal corporate policy" from Marty Uhlfeder ("Uhlfeder"), an officer of Blacker, within the first six (6) months of his employment. *See* Deposition of Jon Gordon Nelson at 199, attached as Exhibit K, to Defendant's Notice of Motion ("Defendant's Motion"). Nelson testified that he did not remember anybody else telling him of the alleged "formal corporate policy." *Id.* Moreover, plaintiff stated that he did not recall ever asking Mr. Blacker about vacation pay. *Id.* at 200.

Once again, the basis of plaintiff's claim is unclear. In his Complaint, plaintiff asserts that he had discussions with Stanley Blacker on April 6, 1986, concerning vacation pay. This allegation is later contradicted by plaintiff's own testimony that he did not remember anyone besides Uhlfeder telling him of the corporate vacation policy, and did not think he had asked Stanley Blacker anything concerning that subject. Defendant's Motion, Exhibit K. Neither of plaintiff's contradictory allegations can withstand a motion for summary judgment.

■ Turning first to the allegation of precontractual negotiations. It is a fundamental principle of contract law "that, where parties have reduced their bargain, or any element of it to writing, the parol evidence rule applies to prevent its variance by parol evidence." *Laskey v. Rubel Corp.*, 303 N.Y. 69, 71, 100 N.E.2d 140 (1951); *Marine Midland Bank–South v. Thurlow*, 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 425 N.E.2d 805 (1981). Therefore, if, as alleged by Nelson in his Complaint, the agreement as to vacation pay predated the written employment Agreement, and it was not included in that Agreement, any evidence with respect to this prior oral agreement is barred by the parol evidence rule. Plaintiff has neither asserted that an exception to the parol evidence rule applies, nor that the parol evidence rule itself is inapplicable. Rather, in its brief, plaintiff abandons this factual contention and legal

theory, arguing that an agreement *subsequent* to the written Agreement was entered into, which entitles him to vacation pay.

█ Specifically, plaintiff's papers in opposition assert that, approximately six months after executing the Agreement, he "entered into an oral agreement with Blacker, through its agent Uhlfeder, whereby plaintiff was to receive two weeks paid vacation from Blacker annually." Plaintiff's Memorandum at 18. However, plaintiff has offered no evidence to support this claim. Defendant has asserted that no such corporate policy exists. Affidavit of Jack Neff, Executive Vice President of Blacker, sworn to on March 2, 1989. Plaintiff merely asserts that Uhleder told him that there was a formal corporate policy concerning vacation pay. This bare allegation alone is insufficient to defeat a motion for summary judgment. Summary judgment for defendant is therefore granted on plaintiff's third cause of action.

## PUNITIVE DAMAGES

█ Finally, plaintiff has asserted a claim for punitive damages based on the alleged "intentional, willful and malicious breach of contract." Complaint ¶ 23. There is no independent cause of action for punitive damages in New York. *See Bernstein v. Centaur Insurance Co.*, 606 F.Supp. 98, 100 (S.D.N.Y.1984); *Weir Metro Ambu–Service v. Turner*, 57 N.Y.2d 911, 456 N.Y.S.2d 757, 442 N.E.2d 1268 (1982); *Bradshaw v. Silversmith*, 122 Misc.2d 544, 546, 472 N.Y.S.2d 237, 239 (Sup.App.Term 1983). Moreover, if the fourth cause of action is a demand for punitive damages, that demand must fail. First, as the Court has granted summary judgment for defendant on all of plaintiff's other claims, punitive damages are unavailable. Moreover, even if plaintiff had a viable claim, punitive damages would be impermissible. Punitive damages are not permitted in a breach of contract action in New York absent "fraud 'aimed at the public generally', evincing a 'high degree of moral turpitude', and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Durham Indus., Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir.1982) (*quoting Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497 (1961)), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982). *See also Brink's Inc. v. City of New York*, 717 F.2d 700, 704 (2d Cir.1983) (punitive damages unavailable under New York law even for deliberate breach of good faith); *Kaufman v. Chase Manhattan Bank N.A.*, 581 F.Supp. 350, 357 (S.D.N.Y.1984) (no punitive damages permitted when investment fraud not aimed at investing public; no moral turpitude or wanton dishonesty); *Hubbell v. Trans World Life Insurance Co.*, 50 N.Y. 2d 899, 901, 430 N.Y.S.2d 589, 590, 408 N.E.2d 918, 919 (1980) (there must be "such a gross disregard of ... contractual obligations as to constitute morally culpable conduct."); *Carl Wagner & Sons v. Appendagez, Inc.*, 485 F.Supp. 762 (S.D.N.Y. 1980) (same); *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 833, 353 N.E.2d 793, 795 (1976) (punitive damages in contract action available only upon showing of public wrong); *Borkowski v. Borkowski*, 39 N.Y.2d 982, 982, 387 N.Y.S. 2d 233, 233, 355 N.E.2d 287, 287 (1976) (punitive damages may be awarded in case of gross and wanton fraud even absent allegations of public wrong).

Plaintiff has not alleged any fraud[2] and can suggest no public wrong as result of defendant's conduct. Nelson testified that the malicious conduct alleged was that he

---

**2.** Additionally, punitive damages are available if the acts which constitute the breach of contract may also give rise to liability in tort. That is if the acts violate a legal duty independent of the contractual relationship between the parties, punitive damages may be appropriate. *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363 (2d Cir.1988); *Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81 (2d Cir.1982);

*Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir.1983). In the present instance, plaintiff has not alleged, in either its Complaint or papers in opposition, any cause of action sounding in tort. Where, as here, the only interest involved is holding a party to a promise, a plaintiff will not be permitted to transform the contract claim into one for tort.

**114**

did not "think [Blacker] lived up to the terms of their agreement." Nelson Deposition at 200, attached as Exhibit L to Defendant's Notice of Motion. Nelson stated that he did not feel that Blacker wanted to hurt him, but rather that they wanted to go back to their "core business" of tailored clothing. He stated that he was the "scapegoat," as Blacker was having financial troubles and probably wanted to cut expenses. Nelson Deposition at 200–02, attached as Exhibit L to Defendant's Notice of Motion. On the facts alleged, drawing all reasonable inferences in favor of plaintiff, there has been no showing of the type of morally culpable conduct that requires punitive damages. Accordingly, defendant's motion for summary judgment on plaintiff's claim for punitive damages is hereby granted.

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted.

SO ORDERED.