C. Donald **AINSWORTH**, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY**, Defendant.

No. 85–1209–CV–W–6.

United States District Court, W.D. Missouri, W.D.

Dec. 2, 1985.

under written contracts between the insolvent insurers and defendant. Those contracts, executed in 1975, each contain an arbitration clause which provides, among other things:

> Should any difference of opinion arise between the Reinsurer and the Company which cannot be resolved in the normal course of business with respect to the interpretations of this Agreement or the performance of the respective obligations of the parties under this Agreement, the difference shall be submitted to arbitration.

Moreover, "[t]he laws of the State of Missouri shall govern the arbitration." It is defendant's position that the above arbitration clause, enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., precludes plaintiff from initially resorting to judicial avenues of relief and that it, consequently, is entitled to an order staying the pending litigation.

## THE FEDERAL ARBITRATION ACT AND STATE LAW

The FAA, enacted in 1947, establishes a federal policy favoring the arbitration of disputes; it "was specifically enacted to reverse antiquated state rules of law that make arbitration agreements revocable at will anytime prior to the issuance of the arbitration award." *Johnson Controls, Inc. v. City of Cedar Rapids, Iowa,* 713 F.2d 370, 376 (8th Cir.1983). The Act provides that a written provision in any contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 directs a district court to stay any judicial proceeding, upon application of one of the parties, when both the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration" un-

John C. Craft, Lathrop, Koontz, Righter, Clagett & Norquest, Kansas City, Mo., for plaintiff.

Thomas O. Baker, Baker & Sterchi, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Following removal of the above-captioned action to federal court, defendant Allstate Insurance Company has moved for a stay of all proceedings pending arbitration of the underlying dispute. Plaintiff C. Donald Ainsworth, Director of the Missouri Division of Insurance, was appointed domiciliary receiver of two insolvent Missouri insurance companies, Medallion Insurance Co. and Missouri General Insurance Co., in 1981. As authorized by Missouri statutes, *see* RSMo. 375.660,[1] the receiver commenced the present action to recover payment of reinsurance funds allegedly due

1. As part of the Insurance Superintendent's functions in liquidating, settling or winding up the affairs of insolvent insurance companies, he may "maintain and defend all actions in the courts of this or any other state, or of the United States, relating to such company, its assets, liabilities and business."

der a written agreement *and* when the stay applicant "is not in default in proceeding with such arbitration."

The present case raises the question of whether the FAA preempts contrary state laws on the arbitrability of disputes even when the arbitration clause at issue expressly declares state law to be controlling. The parties here agree that Missouri law prior to the General Assembly's 1980 adoption of the Uniform Arbitration Act "adhered to the common law rule of unenforceability of executory agreements to arbitrate."[2] *See Bunge Corp. v. Perryville Feed & Produce, Inc.,* 685 S.W.2d 837, 839 (Mo. banc 1985); *Jenks v. Jenks,* 385 S.W.2d 370 (Mo.App.1964). If the parties' express choice of law decision here is respected (i.e., Missouri law governs), the arbitration clauses would be unenforceable and plaintiff would be entitled, on behalf of the insolvent insurance companies, to litigate its contractual dispute in a court having appropriate subject matter jurisdiction.

■ Judicial construction of the FAA, however, makes clear that arbitration clauses included within its broad scope are governed by federal substantive law. *Southland Corporation v. Keating,* 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984) ("[T]he underlying issue of arbitrability" is "a question of substantive federal law.").

> We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract "evidencing a transaction involving commerce" and such clauses may be revoked only upon "grounds as exist at law or in equity for the revocation of any contract." We see nothing in the Act indicating that the broad principle of enforceability is sub-

ject to any additional limitations under state law.

*Id.* at 11.

■ Where the arbitration clause is contained in a contract involving interstate commerce ("commerce among the several States or with foreign nations," 9 U.S.C. § 1), it is enforceable under the FAA regardless of any state laws to the contrary. Within its reach, the Federal Act is supreme and the parties cannot, by choice of law provisions, provide otherwise. *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1269 (7th Cir.1976) ("Congress, in enacting the Federal Arbitration Act, exercised its power over admiralty and interstate commerce. Any arbitration clause involving one of those areas is governed by the Federal Act. To permit the parties to contract away the application of the Act by adopting state law to govern their agreement would be inconsistent with the Act itself ..."). *Accord, Paul Allison, Inc. v. Minikin Storage of Omaha,* 486 F.Supp. 1, 3–4 (D.Neb.1979). *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 723 F.2d 155, 158 (1st Cir.1983), *aff'd. in part, rev'd. in part,* —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (The FAA preempts the application of a Puerto Rican law that does not recognize certain kinds of arbitration agreements).

■ Language in Eighth Circuit and Missouri appellate decisions supports the conclusion that the choice of law provision in the arbitration clauses here cannot defeat the validity of those clauses *if* an interstate commerce transaction is involved. In *Collins Radio Company v. Ex-Cell-O Corp.,* 467 F.2d 995 (8th Cir.1972), plaintiff attempted to avoid arbitration as provided for in its contract with defendant by arguing that Texas law governed the question of the validity of the arbitration clause "and that the requisites of the Texas Arbitration Act had not been satisfied."

---

2. Even under the new Missouri Arbitration Act, the general rule that written arbitration agreements are valid and enforceable does not apply to "contracts of insurance and contracts of adhesion." RSMo. 435.350. The arbitration

clauses included in the reinsurance agreements at issue here, therefore, would likely not be enforceable if Missouri substantive law, either pre or post-1980, governed the arbitrability question.

The Eighth Circuit enforced the challenged arbitration clause, holding that "the Federal Act bars resort to state arbitration rules to determine the validity of arbitration clauses in interstate contracts." 467 F.2d at 997. In challenging a mandatory arbitration clause contained in a contract with a private construction firm, the City of Cedar Rapids in *Johnson Controls, Inc.* invoked Iowa common law to the effect that executory arbitration agreements are generally unenforceable. Describing the City's argument as misplaced, the Eighth Circuit wrote that "[b]ecause federal substantive law preempts state law governing the enforceability of arbitration agreements in interstate contracts, the present contract is not unenforceable under applicable federal law." 713 F.2d at 376. *See also Bunge Corp.*, 685 S.W.2d at 839 (Conditions on the enforceability of arbitration clauses imposed by the Missouri arbitration act "may not be applied to defeat the arbitration provision of a contract which is within the coverage of the federal statute;" this result is mandated by the Supremacy Clause and by the fact that the FAA was passed pursuant to Congress' constitutional power to regulate interstate commerce.).

The above discussion demonstrates that Missouri's longstanding policy against the validity of arbitration clauses (and its most recent legislative policy of exempting insurance contracts from the new rule making such clauses generally enforceable) cannot defeat the validity of arbitration provisions *within the coverage of the FAA.* The preemptive authority of the FAA cannot be avoided by choice of law decisions of the contracting parties or by the fact that the present court action is expressly authorized by Missouri statute. Plaintiff here argues with justification, however, that defendant must also adequately demonstrate that the reinsurance agreements are within the scope of the FAA—i.e., that they concern interstate commerce transactions. The fact that the parties to the reinsurance

agreements were of diverse citizenship [3] is not enough to establish the interstate connection, in this court's view, because of the possibility that the reinsurance agreements were executed in Missouri and were to be performed entirely in Missouri, regardless of defendant's Illinois citizenship. The Missouri Supreme Court in *Bunge Corp.*, for example, expressed no hesitation in finding that the contract there did evidence an interstate transaction within the meaning of the FAA because it called "for the delivery by the Missouri defendants of soybeans to the plaintiff in Cairo, Illinois." 685 S.W.2d at 838. *See also Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208, 209 (2d Cir.1973) (The FAA "is applicable only if the contract evidences a transaction involving interstate or foreign commerce;" such interstate nexus was involved here because the contract contemplated that Varley would act as a textile consultant throughout the United States); *Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104, 106 (N.D.Ill.1980), *aff'd* 653 F.2d 310 (7th Cir.1981) (Agreement not predicated upon interstate commerce "must be governed by state arbitration law;" a contract between a New York Stock Exchange brokerage firm and its employee, however, "is a contract involving interstate commerce governed by the Act.").

The defendant's reply brief [4] which, among other things, addresses the interstate nexus issue in some detail persuades the court that the reinsurance agreements are within the scope of the FAA. First of all, as defendant points out, that the agreements involve insurance may be enough to establish the interstate commerce connection. *See Bernstein v. Centaur Insurance Co.*, 606 F.Supp. 98, 101 (S.D.N.Y.1984). More importantly, the underlying casualty and liability insurance policies involved here (issued by the now defunct Missouri insurers) were at least in part negotiated in states other than Missouri. *See* Exhibit C

---

**3.** Allstate is an Illinois corporation licensed to transact business in Missouri. The insolvent insurance companies were Missouri corporations.

**4.** Defendant is granted leave to file this reply brief one day out of time. The Clerk's office will be directed to file these further suggestions.

to plaintiff's petition, at 8–9. Similarly, the Medallion companies' liability on some of the claims of out-of-state insureds was determined in the United States District Court for the District of Columbia or the Cook County, Illinois, Circuit Court, thereby indicating that intrastate activities were not alone involved. Petition, paragraphs 9–10. In sum, the court concludes that the reinsurance agreements at issue here are within the coverage of the FAA—that is, they touch on interstate commerce transactions.

## FAA AND THE McCARRAN-FERGUSON ACT

■ Plaintiff also opposes the pending motion for stay on the ground that application of the FAA here would run afoul of the McCarran-Ferguson Act's policy of leaving regulation of the insurance industry to the states. The latter Act provides that the insurance business "shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). In addition, "[n]o Act of Congress shall be construed to invalidate, impair or supercede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Plaintiff argues that enforcement of the arbitration clauses in the present case would be contrary to two Missouri laws regulating the insurance industry: (1) the common law and statutes (the 1980 Uniform Arbitration Act) that have always made invalid and unenforceable arbitration clauses found in contracts of insurance, and (2) RSMo 375.660 which, as part of a comprehensive scheme to wind up the affairs of an insolvent insurance company, gives the Missouri Superintendent of the Insurance Division the power to maintain actions in both state and federal courts "relating to such company, its assets, liabilities, and business." In light of these two state laws, application of the FAA would purportedly impair Missouri's capacity under the McCarran-Ferguson Act to regulate the insurance industry within its borders.

At least three appellate court decisions have considered the applicability of the FAA in situations where the McCarran-Ferguson Act might have arguably prevented enforcement of arbitration clauses. In *Hart v. Orion Insurance Co.*, 453 F.2d 1358 (10th Cir.1971), a dispute arose over the arbitration provisions of an occupational disability insurance policy. The injured plaintiff, an airline pilot, unsuccessfully attempted to avoid arbitration by invoking the McCarran-Ferguson Act. The Tenth Circuit wrote:

> None of the provisions of the Montana, Illinois, and Colorado statutes to which our attention has been called regulate the business of insurance. Instead, they are laws of general applicability *pertaining to the method of handling contract disputes* ... Accordingly, the McCarran-Ferguson Act does not bar the application of the Federal Arbitration Act and the arbitration provisions are enforceable in the case at bar.

(Emphasis added.) 453 F.2d at 1360. Similarly, the Second Circuit in *Hamilton Life Insurance Co. of New York v. Republic National Life Insurance Co.*, 408 F.2d 606, 611 (1969), rejected a McCarran Act challenge to an arbitration clause by concluding that state arbitration statutes "are not statutes regulating the business of insurance, but statutes regulating the method of handling contract disputes generally." *Accord, Miller v. National Fidelity Life Insurance Co.*, 588 F.2d 185, 187 (5th Cir.1979) ("The test under McCarran-Ferguson is not whether a state has enacted statutes regulating the business of insurance, but whether such state statutes will be invalidated, impaired, or superceded by application of federal law.").

Missouri's pre-1980 common law that provided that arbitration clauses are generally unenforceable does not fall in the category of laws regulating the insurance business. Moreover, the Uniform Arbitration Act adopted in 1980, which does contain an insurance contract exception, does not apply retroactively to the 1975 reinsurance

agreements at issue here. As to the insurance code provision authorizing domicilliary receivers to bring suits in state and federal courts, application of the FAA does not impair the *substantive* remedy under Missouri law but merely requires the receiver to seek that relief through arbitration. Enforcing the arbitration clauses would not necessarily disrupt the orderly liquidation of the insolvent insurance companies; plaintiff has pointed to no provisions in the Missouri Insurance Code that prohibit the arbitration of disputes involving such companies. *See, e.g., Bernstein,* 606 F.Supp. at 101–102 ("[I]f New York has a law that specifically prohibits arbitration in disputes involving the insurance business, arbitration may be precluded in this case."). For the reasons discussed above, the court concludes that enforcement of the arbitration clauses pursuant to the FAA would not "invalidate, impair, or supercede" any Missouri law enacted for the purpose of regulating the insurance business and that, therefore, the McCarran-Ferguson Act is no bar to the stay order sought by defendant. Accordingly, it is hereby

ORDERED that the reinsurance agreements are within the coverage of the Federal Arbitration Act—that is, they concern interstate commerce transactions—and that, therefore, defendant is entitled to a stay of these proceedings pending completion of the arbitration process.[5] It is further

ORDERED that the parties shall arrange between themselves an appropriate timetable for the arbitration proceedings and shall inform the court promptly when such a scheduling agreement has been reached. It is further

ORDERED that defendant is granted leave to file its reply brief out-of-time. The Clerk's office is directed to file this reply brief.

---

5. Defendant has satisfied the court that it is not "in default in proceeding with such arbitration." 9 U.S.C. § 3. Defendant has not waived or otherwise lost its right to invoke the arbitration

clauses of the reinsurance agreements, nor has it consented to litigation of the present dispute in federal court.