In the Matter of Arbitration of
**MUTUAL REINSURANCE
BUREAU, Claimant,**

v.

**GREAT PLAINS MUTUAL
INSURANCE COMPANY,
INC., Respondent.**

**No. 89–1187–C.**

United States District Court,
D. Kansas.

Oct. 11, 1990.

Paula J. Wright, King, Adrian, King & Brown, Salina, Kan., for claimant.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, Kan., for respondent.

## MEMORANDUM AND ORDER

CROW, District Judge.

This diversity of citizenship case comes before the court upon claimant Mutual Reinsurance Bureau's (MRB) motion, pursuant to 9 U.S.C. § 9, seeking to confirm the arbitration award entered on December 13, 1988, in its favor and against respondent Great Plains Mutual Insurance Company, Inc. (GPM).

MRB is an Illinois corporation which, at all times relevant to this matter, was the reinsurer for GPM. GPM is a general property casualty insurer; its principal place of business is Salina, Kansas.

MRB and GPM entered a reinsurance agreement entitled "First Excess Catastrophe Reinsurance Agreement # 5644." Under that agreement, GPM was responsible for the first $150,000 of the ultimate net loss on any *one* occurrence. MRB was liable "for the amount by which such ultimate net loss exceeds" $150,000, but not to exceed $427,500 (95% of the $450,000) in regard to any one loss occurrence.

The agreement defined "loss occurrence" as "the sum of all individual losses directly occasioned by any one disaster, accident, or loss, or series of disasters, accidents, or losses arising out of one event which occurs within the area of one state of the United States ..." When the loss entailed damage from wind, hail, or tornado, the duration and extent of any one loss occurrence was limited to "any period of 72 consecutive hours arising out of and directly occasioned by the same event." In the event of a dispute between the parties, the agreement contained an arbitration clause.

On August 17, 1987, Kansas was assailed by a storm. On August 19, 1987, either that same storm or another storm system struck Kansas. Those weather conditions damaged property insured by GPM. The damage was sufficient for GPM to make claims against MRB under the reinsurance agreement. Under the terms of the reinsurance agreement, a "one storm" theory favored GPM; a "two storm" theory favored MRB.

Pursuant to the reinsurance agreement, between October 9, 1987, and November 23, 1987, MRB made a series of payments to GPM totalling $275,401.09. On December 1, 1987, MRB sent a letter to GPM's attorney which stated, *inter alia,* that MRB was not waiving any of its rights under the reinsurance agreement. On January 4, 1988, MRB announced its intention to send the matter of whether the one or two storms had caused the damage to arbitration. In two subsequent payments, MRB paid a total of $166,669.92 to GPM. MRB conditioned those payments upon the ultimate decision rendered by the arbitrators.

On February 26, 1988, MRB informed GPM that it was initiating the arbitration procedure as outlined in the reinsurance agreement. On March 7, 1988, GPM informed MRB that it "has not, does not and will not consent to arbitration." It was and remains GPM's position that K.S.A. 5–401 prohibits the enforceability of an arbitration clause in any "contract of insurance."

Pursuant to the agreement, arbitrators were chosen.[1] On October 21, 1988, an evidentiary hearing was conducted. The arbitration decision was journalized on December 13, 1988. Consistent with its March 7, 1988, letter, GPM took no part in the arbitration. GPM did not present evidence or otherwise participate in the arbitration evidentiary hearing.

1. MRB contends, and GPM apparently concedes, that the arbitration clause of the agreement provided for the ex parte selection of arbitrators. Because GPM was not required to participate in the selection of the arbitrators, the arbitrators were authorized to proceed with the evidentiary hearing in GPM's absence. *See Standard Magnesium Corp. v. Fuchs,* 251 F.2d 455, 456–458 (10th Cir.1957); *Corallo v. Merrick Cent. Carburetor, Inc.,* 733 F.2d 248, 250–251 (2nd Cir.1984).

The arbitration award was favorable to MRB. The arbitrators found that two storm systems had passed through Kansas on August 17 and August 19, 1987. The arbitrators also found that MRB's payments to GPM were conditional. The arbitrators concluded that MRB had overpaid GPM by $142,500. Under the arbitration decision, MRB was awarded $142,500, 50% of the arbitration costs, plus interest if GPM failed to reimburse in the time allotted.

MRB seeks to confirm the arbitration order. GPM challenges the arbitration award on several grounds. The court, having reviewed the memoranda filed by each party, is now prepared to rule on the matter.

## THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act, 9 U.S.C. §§ 1–15, originally enacted in 1947, sets forth the general federal law relating to arbitration. "The Act was passed to ensure that courts would honor and enforce the contractual agreements of parties who choose to resolve their disputes through the informal process of arbitration." *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1061 (5th Cir.1990). The Act embodies the federal policy favoring arbitration agreements. " '[T]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered,' a concern which 'requires that we rigorously enforce private agreements to arbitrate.' " *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

The FAA is not an independent source of federal jurisdiction. "Under the FAA, federal jurisdiction is available only if otherwise available through some independent source such as 28 U.S.C. § 1331 or § 1332." *Mesa Oper. Ltd. Part. v. Louisiana Intrastate Gas*, 797 F.2d 238, 240 (5th Cir.1986); 9 U.S.C. § 4. Once federal jurisdiction is established, the FAA empowers the court, *inter alia*, to enter an order confirming the award. 9 U.S.C. § 9. Once an arbitration award has been rendered, the court may, under certain limited circumstances, vacate or modify the award. 9 U.S.C. §§ 10, 11.

## THE McCARRAN–FERGUSON ACT

■ Prior to the Supreme Court's decision in *United States v. South–Eastern Underwriters Assn.*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), it was assumed that "insurance" was not a transaction in commerce. *See S.E.C. v. National Securities*, 393 U.S. 453, 458, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); R. Jerry II, *Understanding Insurance Law*, at 50–53 (1987). In response to that decision, Congress passed the McCarran–Ferguson Act. Section 1 of the Act contains the declaration of policy:

> The Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States. 15 U.S.C. § 1011.

The operative language of the Act is contained in section 2:

> (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business unless such Act specifically relates to the business of insurance ... 15 U.S.C. § 1012.

Therefore, State laws regulating the "business of insurance" supersede federal laws that do not directly regulate the "business of insurance."

The phrase "business of insurance" is the key to determining whether federal law has been preempted by the states. The Act does not define "business of insurance." In *National Securities*, the Supreme Court commented:

The statute did not purport to make the States supreme in regulating all the activities of insurance *companies;* its language refers not to the person or companies who are subject to state regulation, but to laws "regulating the *business* of insurance." Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the " 'business of insurance' does the statute apply." 393 U.S. at 459–60, 89 S.Ct. at 568. (Emphasis in original).

The court went on to say:

> The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance." 393 U.S. at 460, 89 S.Ct. at 568.

In *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 217, 99 S.Ct. 1067, 1076, 59 L.Ed.2d 261 (1979), the Court clarified the latter quote:

> "[E]very business decision made by an insurance company has some impact on its reliability, its ratemaking, and its status as a reliable insurer. The manager of an insurance company is not different from the manager of any enterprise with the responsibility to minimize costs and maximize profits. If terms such as 'reliability' and 'status as a reliable insurer' were to be interpreted in the broad sense urged by the petitioners, almost every business decision of an insurance company could be included in the 'business of insurance.' Such a result would be plainly contrary to the statutory language,

which exempts the 'business of insurance' and not the 'business of insurance companies.' "

In *Union Labor Life Insurance Co. v. Pireno Co.*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), the Court refined and articulated the *Royal Drug* three-part test for determining whether an insurer's activity is within the "business of insurance." Three questions must be asked: (1) Does the insurer's activity involve the transferring or spreading of a policyholder's risk; (2) Is the insurer's activity an integral part of the policy relationship between the insurer and the insured; (3) Is the activity limited to entities within the insurance industry? None of these criteria is necessarily determinative in itself. 458 U.S. at 127–129, 102 S.Ct. at 3007–3009.

In summary, the McCarran–Ferguson Act declares that state law regulating the "business of insurance" controls over federal law not specifically relating to the "business of insurance." 15 U.S.C. § 1012.

ANALYSIS

MRB contends that the arbitration clause in the reinsurance agreement it entered with GPM is governed by the Federal Arbitration Act. Pursuant to that Act, MRB seeks to enforce the arbitration award. GPM's primary defense in this matter centers on the McCarran–Ferguson Act and the operation of K.S.A. 5–401.

K.S.A. 5–401, as it existed at the time the parties entered this agreement provided:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract, other than a *contract of insurance* or a contract between an employer and employees or between their respective representatives, to submit to arbitration any controversy, other than a claim in tort, thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. (Emphasis added.)[2]

---

**2.** The court notes that K.S.A. 5–401 was amended as of July 1, 1987. L.1987, ch. 38, § 1. *See* K.S.A.1990 Supp. 5–401. Presumably, this change would not affect the agreement between MRB and GPM which was entered prior to its

No court has interpreted the meaning of "contract of insurance" found in K.S.A. 5–401.[3]

The sole issue is whether the Federal Arbitration Act invalidates, impairs, or supersedes K.S.A. 5–401. *See Miller v. National Fidelity Life Ins. Co.*, 588 F.2d 185, 187 (5th Cir.1979) (the test under McCarran–Ferguson is not whether a state has enacted statutes regulating the business of insurance, but whether such state statutes will be invalidated, impaired, or superseded by application of federal law).

■ The court concludes that the FAA does not conflict with K.S.A. 5–401. Several reasons support this conclusion. Generally, state arbitration laws are not laws regulating the business of insurance.

> Arbitration laws regulating the method of handling contract disputes generally are not laws regulating the business of insurance within the meaning of the McCarran Act. The Act does not preclude application of the Federal Arbitration Act as regards parties to a reinsurance agreement containing an arbitration clause.

2A G. Couch, *Couch on Insurance* 2d § 21:45, at 363 (Rev. ed. 1984).

At least three appellate courts have considered the applicability of the FAA when the McCarran–Ferguson Act might arguably have prevented the operation and enforcement of arbitration clauses. In *Hart v. Orion Ins. Co.*, 453 F.2d 1358 (10th Cir.1971), the insured contended that the McCarran–Ferguson Act prevented the arbitration of an occupational disability insurance policy. The Tenth Circuit concluded:

> None of the provisions of the Montana, Illinois, and Colorado statutes to which our attention has been called regulate the business of insurance. Instead, they are laws of general application pertaining to the method of handling of contract disputes ... Accordingly, the McCarran–Ferguson Act does not bar the application of the Federal Arbitration Act and the arbitration provisions are enforceable in the case at bar.

453 F.2d at 1360.

In *Hamilton Life Insurance Co of New York v. Republic National Life Insurance Co.*, 291 F.Supp. 225 (S.D.N.Y.1968), *aff'd* 408 F.2d 606, 611 (2nd Cir.1969), the Second Circuit rejected a McCarran–Ferguson Act challenge to an arbitration clause. The court of appeals, affirming the district court, concluded that the state arbitration laws were not statutes regulating the business of insurance, but were statutes handling contract disputes generally.[4] *Accord, Miller, supra*, 588 F.2d at 187 (following *Hart* and *Hamilton*).

■ K.S.A. 5–401 differs from the arbitration statutes considered in *Hart, Hamilton* and *Miller* in that it appears that none of the arbitration statutes considered in those cases contained the phrase "contracts of insurance."[5] K.S.A. 5–401 specifically

---

effective date. In any event, this amendment effected no substantive change in the statute.

3. GPM directs the court's attention to *NEA–Topeka v. U.S.D. No. 501*, 7 Kan.App.2d 529, 644 P.2d 1006 (1982). In *NEA–Topeka*, the Kansas Court of Appeals found "the language of 5–401 to be plain and unambiguous and to exclude all contracts between an employer and employees, or . between their respective representatives, whether in the public or private sector." *Id.* at 532, 644 P.2d 1006. Therefore, the court of appeals did not consider the phrase "contract of insurance" found in K.S.A. 5–401. Thus, the court of appeals' analysis in *NEA–Topeka* is of little or no relevance to the case at bar.

4. The district court also concluded that the McCarran–Ferguson Act did not empower a state to regulate interstate insurance practices which have their situs outside its borders. 291

F.Supp. at 232. As such, the court concluded that the application of the Texas Arbitration Statute to "prohibit the submission of this extraterritorial dispute to arbitration in New York City would not be 'regulation' within the meaning of 2(b) of the McCarran–Ferguson Act." *Id.*

5. In *Hamilton*, the district court considered whether Texas law prevented arbitration of contracts of insurance.

> Respondent asserts that Article 224 of the present Texas Arbitration Statute is in direct conflict with the Federal Arbitration Act. This Texas provision renders enforceable written agreements to arbitrate future as well as existing disputes but provides that "none of the provisions of this Act shall apply to ... any contract of insurance or any controversy thereunder." Title 10 Vernon's Ann.Civil Stats. Art. 224 (1967 Supp.) However, this

prevents arbitration of "contracts of insurance." The court concludes, however, K.S.A. 5–401 is inapplicable to the reinsurance agreement between GPM and MRB because that agreement is not a "contract of insurance" but is a "contract for insurance."

In *Security Mut. Cas. Co. v. Century Cas. Co.*, 531 F.2d 974 (10th Cir.), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976), the court of appeals recognized and discussed the distinction between a reinsurance treaty and a contract of insurance.

> A primary insurance contract is essentially unilateral in nature. The entire relationship is based upon a promise and a condition. The insurer promises to pay a sum of money upon the happening of an uncertain and fortuitous event, conditioned upon the payment of premiums by the insured. The insured makes no return promise to pay the premiums and the other duties placed on the insured are usually stated as conditions rather than promises. 3A Corbin on Contracts § 731 (1960)....
>
> In contrast, a reinsurance treaty is a contract for insurance, not a contract or policy of insurance. 19 Couch on Insurance 2d § 80:2 (1965). In a reinsurance treaty, the reinsured contracts to cede all or part of its risks to the reinsurer. The reinsurer contracts to accept the risks in return for a portion of the premiums. 13 Appleman, Insurance Law and Practice (1965) § 7681 (1945). A treaty is a bilateral contract containing mutual covenants. Id. at 977.

The agreement between GPM and MRB is a reinsurance treaty and is therefore a "contract for insurance." GPM does not dispute that the agreement is a reinsurance treaty. GPM does, however, contend that the legislature intended the phrase to bar

arbitration in *all* contracts involving insurance contracts. The court rejects GPM's interpretation. By its own terms, K.S.A. 5–401 only excludes arbitration of "contracts of insurance." A "contract of insurance" is not the same as a "contract for insurance."

█ It is presumed the legislature acted with full knowledge and information as to judicial decisions with respect to prior law. *See Szoboszlay v. Glessner*, 233 Kan. 475, 664 P.2d 1327 (1983). The differentiation between contracts of insurance and reinsurance treaties is a well-recognized distinction. *See, e.g. Pioneer Life Ins. Co. v. Alliance Life Ins. Co.*, 374 Ill. 576, 30 N.E.2d 66 (1940). Therefore, it is reasonable to believe that the legislature intended K.S.A. 5–401 to apply only to "contracts of insurance," i.e., contracts typically between the insurance company and the insured.

The result reached is consistent with the FAA, the McCarran–Ferguson Act, K.S.A. 5–401, and the agreement between GPM and MRB. In *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court commented:

> In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.

After quoting the text of 9 U.S.C. § 2, the Court concluded:

> We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract "evidencing a transaction involving commerce" and such clauses may be revoked upon

---

provision is applicable only to arbitration agreements made after January 1, 1966 and, therefore, would not apply to the instant agreement, which was executed in September, 1965. Id. Art. 238–3 (1967 Supp.). *Hamilton*, 291 F.Supp. at 231–232.

Therefore, the district court in Hamilton did not confront the precise issue at bar. On appeal, the Second Circuit stated:

"It is quite plain that arbitration statutes, including those of Texas and New York, are not statutes regulating the method of handling contract disputes generally." 408 F.2d at 611. The court of appeals' opinion did not differentiate between the two versions of the Texas Arbitration Act.

"grounds as exist at law or in equity for the revocation of any contract." We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law. (Footnote omitted.)

465 U.S. at 10–11, 104 S.Ct. at 858.

The pervasiveness of this policy favoring arbitration has influenced other courts in resolving potential conflicts between the FAA and the McCarran–Ferguson Act in favor of arbitration.

At this juncture, we see no certain impairment of Texas insurance law which would trigger the McCarran Act or thwart arbitration. Therefore, we are swayed by the ponderous mandate which declares that doubts at to the availability of arbitration must be resolved in favor of arbitration.

*Life of America Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 413 (5th Cir.1984).

Because the FAA does not conflict with K.S.A. 5–401, the McCarran–Ferguson Act is not implicated. The court concludes that GPM and MRB are bound by their agreement to arbitrate.

INTERSTATE COMMERCE AND WAIVER

GPM raises two additional arguments in opposition to confirmation of the arbitration award. GPM contends that its agreement with MRB does not involve interstate commerce, thus making the FAA inapplicable. Alternatively, GPM contends that MRB's payments constitute a waiver of its right to arbitration. MRB responds that its agreement with GPM involved interstate commerce and that it did not waive its right to arbitration.

The court will address both of these arguments.

INTERSTATE COMMERCE

■ The FAA applies to written arbitration agreements involving maritime transactions or commerce. 9 U.S.C. § 2. Under the FAA, "commerce" means interstate commerce. 9 U.S.C. § 1. "[B]ecause of the strong policy favoring arbitration, the requirement of "evidencing a transaction involving commerce must be construed

broadly." *Snyder v. Smith,* 736 F.2d 409, 417 (7th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). The FAA is not limited to the interstate shipment of goods; the Act applies to contracts relating to interstate commerce. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)).

■ Since the Supreme Court's decision in *South–Eastern Underwriters* in 1944, there is no doubt that insurance is "commerce." Insurance conducted across state lines is therefore interstate commerce. *Ace Grain Co: v. American Eagle Fire Ins. Co. of New York,* 95 F.Supp. 784 (S.D. N.Y.1951). In *Hart, supra,* 453 F.2d at 1360, the court of appeals recognized that interstate insurance transactions are subject to federal regulation under the commerce clause.

The next issue presented is whether the reinsurance agreement in the case at bar involves interstate commerce. In *Hamilton, supra,* the parties entered a reinsurance agreement. The reinsurance agreement was executed by the New York reinsurance company and then mailed to the insurance company for signature. The district court commented:

"It is uncontroverted that the agreement in issue satisfies the jurisdictional requirements of the Act. Section 2 of the Federal Arbitration Act, 9 U.S.C. § provides that a written arbitration provision 'in ... a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' The agreement in issue involving interstate transactions between companies of different states is manifestly one 'evidencing a transaction involving (interstate) commerce.'" 291 F.Supp. at 229, n. 2.

In *Ainsworth v. Allstate Ins. Co.,* 634 F.Supp. 52, 55 (W.D.Mo.1985), the court considered whether the reinsurance agreements in that case involved interstate commerce. In *Ainsworth,* the court noted that

the fact that the agreement involved insurance may be enough to establish the interstate commerce connection. *Id.* at 55. The court found particularly persuasive the fact that part of the underlying casualty and liability insurance policies were at least in part negotiated in states other than Missouri. The court also noted that one of the insurance companies' covered liability on out-of-state insureds. On those facts, concluded that "the reinsurance agreement was within the coverage of the FAA—that is, they touch on interstate commerce transactions." *Id.* at 56.

This court concludes that the reinsurance agreement between GPM and MRB involved interstate commerce. Several facts support this conclusion: (1) The parties to the reinsurance agreement were of diverse citizenship; (2) the contract was one involving reinsurance; (3) GPM states in its "Response to Petitioner's Motion for Order Confirming Arbitration Award," filed April 24, 1989, that it "contemplated *no substantial* interstate activity by either party in performance of the Agreement;" clearly, this is an admission that at least *some* interstate commerce was contemplated by the parties to the agreement; (4) The insurance treaty was apparently originally drafted in Illinois; the final version of the agreement was agreed to and signed in Kansas;[6] (5) MRB's representatives from Illinois personally travelled to Kansas to conduct business; (6) Business relating to the treaty was conducted by interstate telephone and interstate mail; (7) Payments made by GPM to MRB were made from Kansas banks and deposited in Illinois banks; payments made under the treaty agreement by MRB to GPM were paid from an Illinois bank; (8) All payments were made through interstate mail; (9) The agreement to arbitrate allowed each party to select and submit the name of an arbitrator and the location of the arbitration evidentiary hearing.[7]

Although many aspects of the contract negotiation between the two parties transpired within the borders of the State of Kansas, the totality of facts compels the court to conclude that the reinsurance treaty between GPM and MRB was a contract involving interstate commerce.

WAIVER

■ GPM contends that MRB's payments waived MRB's right to arbitration. MRB responds that GPM cannot raise the waiver argument in this proceeding as this court's review of the arbitration order is limited by the FAA. Alternatively, MRB contends that none of its actions waived its right to arbitration.

"A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act." *Taylor v. Nelson,* 788 F.2d 220 (4th Cir.1986). The statutory reasons for which the court may deny confirmation are very limited. "Only clear evidence of impropriety ... justifies the denial of summary confirmation of an arbitration award." *Ormsbee Development Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982). Section 10 provides that an arbitration award may be vacated in the following situations:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them

---

**6.** Apparently, the reinsurance treaty was originally drafted in Illinois. GPM was given an opportunity to modify the agreement in Salina, Kansas. (Affidavit of Robert Monaghan). The affidavit supplied by GPM (Affidavit of C.L. Christian) states that the reinsurance treaty was "executed" on February 6, 1987, in Salina, Kansas.

**7.** The arbitration evidentiary hearing was held in Kansas City, Missouri.

464

that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10. Section 11 provides that an arbitration award may be modified or corrected in the following situations:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

Some courts have also recognized a non-statutory grounds for relief referred to as "the manifest disregard of the law standard." *See Drayer v. Krasner*, 572 F.2d 348 (2nd Cir.), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978) (manifest disregard standard presupposes something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law).

■ The arbitrators in this case concluded that MRB conditionally paid GPM. Under the limited authority granted this court under the FAA, that decision is not subject to vacation, modification or correction. In any event, the arbitrators' conclusion that MRB paid GPM conditionally is supported by the record. "In view of the overriding federal policy favoring arbitration, waiver is not lightly inferred." *Hart, supra*, 453 F.2d at 1360. In *Peterson v. Shearson/American Exp., Inc.*, 849 F.2d 464 (10th Cir.1988), the court of appeals summarized the several factors to be considered in determining whether a party has waived its right to arbitration:

(1) whether the party's action are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "prejudiced" the opposing party. (Citations omitted).

*Id.* at 467–468.

In short, MRB took no actions inconsistent with its right to arbitrate the dispute as to the occurrence of one or two storms. MRB did not file suit nor did it invoke the "litigation machinery" in any way prior to seeking arbitration. MRB informed GPM that its payments were conditionally made and were subject to repayment in arbitration.

■ GPM could have protected itself from the unfavorable result that occurred in this case. Rather than the course it chose, GPM could have sought to enjoin the arbitration hearing. *See Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir.1985). At that time, GPM could have presented its arguments concerning K.S.A. 5–401 to the court. This course of action would have prevented MRB from unnecessarily incurring the expense of arbitration. Instead, GPM chose not to abide by its contractual agreement with MRB. GPM's *own* choice not to participate in the arbitration hearing precluded it from presenting evidence in support of its "one storm" theory.

In sum, the agreement between GPM and MRB contained a valid arbitration clause. Pursuant to that agreement, MRB sought arbitration. K.S.A. 5–401 and the McCarran–Ferguson Act did not operate to prevent the enforcement of the arbitration

clause. Under the authority of the FAA, this court is compelled to confirm the arbitration award.

IT IS THEREFORE ORDERED that Mutual Reinsurance Bureau's motion for confirmation (Dk. # 1) is GRANTED. The clerk is directed to enter judgment in favor of Mutual Reinsurance Bureau in the amount of $182,921.05.[8]

Great Plains Mutual Insurance Company's motion for consolidation, discovery and hearing (Dk. # 7) is denied.

---

8. This amount is derived from the arbitration agreement: the award of $142,500, plus $6,346.82 (fifty percent of the cost of arbitration), plus interest on both sums accruing at the prime rate quoted in the Wall Street Journal on January 2, 1989 (10.5%), plus two (2) percentage points (12.5%), compounded annually. According to the terms of the arbitration agreement, interest began to accrue on the award as of January 13, 1989; interest began to accrue on the arbitration costs as of February 11, 1989.