### STANDARD SECURITY LIFE INSURANCE CO., Plaintiff,

v.

### Devin WEST, Defendant.

No. 00–4118–CV–C–5.

United States District Court, W.D. Missouri, Central Division.

Dec. 13, 2000.

Jared Michael Katy, Los Angeles, CA, Lisa A. Weixelman, Kansas City, MO, for plaintiff.

Chris L. Faiella, Moberly, Mo, for defendant.

## ORDER

LAUGHREY, District Judge.

Pending before the Court are Defendant's Motion to Dismiss (Doc. 5) and Plaintiff's Motion to Dismiss or Stay Defendant's Complaint (Doc. 7). For the reasons stated below, the Defendant's Motion to Dismiss will be granted and the Plaintiff's Motion to Dismiss or Stay Defendant's Complaint will be denied.

## I. Motion to Dismiss Standard

It is well established that in ruling on a motion to dismiss, the Court assumes that the well-pleaded factual allegations in the complaint are true. *Breedlove v. Earthgrains Baking Cos., Inc.*, 140 F.3d 797, 798 (8th Cir.), *cert. denied*, 525 U.S. 921, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998). Additionally, the complaint, and all reasonable inferences arising therefrom, must be viewed in the light most favorable to the plaintiff. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). A motion to dismiss a complaint should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." *Coleman v. Watt*, 40

F.3d 255, 258 (8th Cir.1994) (citing *Morton*, 793 F.2d at 187).

## II. Factual Background

The following facts are considered true only for the purpose of ruling on the Motions to Dismiss. On November 5, 1998, Standard Security Life Insurance Company of New York ("Standard") and Devin West ("West") entered into a written insurance contract. The insurance contract issued by Standard provided coverage in the event a permanent total disability from injury or sickness prevented West from playing football at a professional level.

On June 15, 1999, West filed a claim for total disability under the insurance contract. West alleged that he suffered from a navicular stress fracture on his right foot. West also alleged that the injury was permanent and that he would not be able to resume playing football professionally. Included with his claim, were evaluations from two physicians who concluded that West suffered from a stress fracture. On June 15, 2000, Standard denied West's insurance claim contending that the particular injury which caused his disability was not covered under the terms of the contract. Standard asserted that the stress fracture was not an "injury" or "sickness" because it was not medically attributable to any particular sudden and accidental event; instead, it was a cumulative injury which likely developed over a significant period of time. In the same correspondence, Standard requested that the matter be submitted to binding arbitration pursuant to Paragraph 12 of the insurance contract's general provisions. Paragraph 12 of the contract provides

> *Arbitration:* In the event of a dispute under this Certificate, either, We, the Insured or the Beneficiary may make a written demand for arbitration. In that case, We and the Insured or the Beneficiary will each select an arbitrator. The two arbitrators will select a third. If they cannot agree within fifteen (15) days, either We, the Insured or the Ben-

eficiary may request that the choice of arbitrator be submitted to the American Arbitration Association. The arbitration will be held in the state of the Insured's or the Beneficiary's principal residence.

On approximately June 20, 2000, West's counsel informed Standard's counsel that West intended to file suit for breach of the insurance contract. On June 21, 2000, West filed a petition for breach of contract and vexatious refusal to pay in the Circuit Court of Boone County, Missouri. On June 30, 2000, Standard filed an action in federal court to compel West to arbitrate the dispute. Standard also filed a notice of removal in the state court action and removed the case to this Court. During a telephone conference held on September 6, 2000, the Court consolidated the two cases for all purposes. Standard has filed a Motion to Dismiss the action originally filed by West in Boone County and West has filed a Motion to Dismiss the action filed by Standard in this Court.

## III. Discussion

### A. West's Motion to Dismiss

West raises one main argument in his Motion to Dismiss. West contends that the Missouri Arbitration Act ("MAA") makes arbitration clauses in insurance contracts unenforceable. West also contends that the MAA is not preempted by the Federal Arbitration Act ("FAA") because the McCarran–Ferguson Act prevents inadvertent preemption of a state statute which regulates the business of insurance. Therefore, West concludes that Standard's action to compel arbitration should be dismissed.

 The Missouri Arbitration Act provides, in relevant part, that "a written contract, *except contracts of insurance and contracts of adhesion,* to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable." Mo.Rev.Stat. § 435.350 (emphasis added). Hence, Missouri law makes the arbitration clause in

Standard's insurance contract unenforceable. As a general rule, however, an arbitration clause contained in a contract would be enforceable under the Federal Arbitration Act which preempts any contrary Missouri statute. *Transit Casualty Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 1996 WL 938126, *2 (W.D.Mo.1996). One exception to this general rule of preemption is contained in the McCarran–Ferguson Act. Congress passed the McCarran–Ferguson Act to insure that the states can regulate the business of insurance "free from the inadvertent preemption by federal statutes of general applicability." *Autry v. Northwest Premium Services*, 144 F.3d 1037, 1040 (7th Cir.1998). The Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act [of Congress] specifically relates to the business of insurance." 15 U.S.C. § 1012.

To determine whether Mo.Rev.Stat. § 435.350 is saved from preemption by the McCarran–Ferguson Act, the Court must consider: (1) whether the federal statute specifically relates to the business of insurance; (2) whether the state law at issue was enacted for the purpose of regulating the business of insurance; and (3) whether the application of the federal law invalidates, supercedes or impairs the state law. *See United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). In this case, the federal statute (FAA) does not relate to insurance and its application will necessarily invalidate the Missouri statute which prohibits mandatory arbitration of insurance contracts. The more difficult question is whether the Missouri law prohibiting mandatory arbitration of insurance contracts was enacted for the purpose of regulating the business of insurance.

The Supreme Court in *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 360, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), recently clarified the test for determining when a state law regulates the business of insurance. First, a court must ask whether common sense shows that the state law regulates insurance. Second, a court looks at three factors as "checking points" or "guide posts" to test its common sense conclusion. Those factors are: 1) Does the law have the effect of transferring or spreading a policy holder's risk? 2) Is the law an integral part of the policy relationship between the insurance company and the insured? 3) Is the law limited to the insurance industry? *Id.* at 367, 119 S.Ct. 1380. These three factors are relevant but not required. Hence, to find that the state law regulates the business of insurance, all three factors need not be present. *Id.* at 374, 119 S.Ct. 1380.

In *Transit Casualty v. Certain Underwriters at Lloyd's of London*, 1996 WL 938126 (W.D.Mo.1996), the same statute at issue in this case was analyzed to determine if it regulated the business of insurance. Plaintiff was an insurance company that brought suit alleging that the defendants owed the plaintiff money under three separate agreements. *Id.* at *1. As in this case, defendant removed the lawsuit to federal court to compel the plaintiff to arbitrate the dispute pursuant to an arbitration clause in the insurance contract. *Id.* Plaintiff argued that the arbitration clause was invalid because the MAA prohibited the enforcement clauses in insurance contracts and the McCarran–Ferguson Act saved the Missouri statute from preemption by the FAA. *Id.* at *2. The district judge concluded that the Missouri statute was enacted for the purpose of regulating insurance in that it was designed to regulate the operation of an insurance contract. Hence, the MAA was not preempted by the FAA.

Standard argues that West's reliance on *Transit Casualty* is inappropriate because it has no precedential value. Standard urges the Court to instead rely on *Ainsworth v. Allstate Ins. Co.*, 634 F.Supp. 52 (W.D.Mo.1985), another case decided at

the district level. In *Ainsworth,* the receiver brought suit to recover payment of reinsurance payments allegedly due under written contracts between the insolvent insurers and the defendants. 634 F.Supp. at 53. The defendant argued that the arbitration provision contained in the contracts was enforceable under the FAA and the receiver argued that application of the FAA "would run afoul of the McCarran–Ferguson Act's policy of leaving regulation of the insurance industry to the states." *Id.* The district judge in *Ainsworth* rejected the receiver's argument.

*Transit Casualty* and *Ainsworth* are distinguishable. At the time the *Ainsworth* contract was written, Missouri law generally prohibited arbitration clauses, but Mo.Rev.Stat. § 435.350 had not yet been passed specifically invalidating arbitration clauses in insurance contracts. The district judge in *Ainsworth* seemed to think this issue was significant, citing *Bernstein for and on Behalf of Comm'r of Banking and Ins. of State of Vt. v. Centaur Ins. Co.,* 606 F.Supp. 98, 101–02 (S.D.N.Y.1984), which had suggested that if New York had a law which specifically invalidated arbitration clauses in insurance contracts, the law may have survived preemption because of the McCarran–Ferguson Act.

Courts in other jurisdictions have addressed the issue of whether the McCarran–Ferguson Act prevents a state's statute from being preempted by the FAA. *See e.g., Stephens v. American Int'l Ins. Co.,* 66 F.3d 41 (2nd Cir.1995) (finding that the state statute regulated insurance under the McCarran–Ferguson Act, thus, it was not preempted by the FAA); *Mutual Reinsurance Bureau v. Great Plains Mut. Ins. Co., Inc.,* 969 F.2d 931 (10th Cir.), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 604, 121 L.Ed.2d 540 (1992) (holding that Kansas statute excluding contracts of insurance from valid arbitration agreements was not preempted by the FAA); *Washburn v. Corcoran,* 643 F.Supp. 554 (S.D.N.Y.1986) (explaining that the statute

at issue was for the purpose of regulating insurance and therefore, the FAA must yield to the state law). *But compare Hart v. Orion Ins. Co.,* 453 F.2d 1358 (10th Cir.1971) (finding that McCarran–Ferguson Act did not bar application of the FAA); *Phillips v. Lincoln Nat'l Health & Casualty Ins. Co.,* 774 F.Supp. 1297 (D.Colo.1991) (stating that the FAA did not impair the regulation of the business of insurance); *American Bankers Ins. Co. of Fla. v. Crawford,* 757 So.2d 1125 (Ala.1999) (holding that state statute did not "reverse-preempt" the FAA).

While there does exist case law in support of both parties' arguments, the Court finds that the analysis in *Transit Casualty* and other similar cases is the most persuasive. Common sense suggests that Mo. Rev.Stat. § 435.350 regulates the business of insurance because it only exempts insurance contracts. The *UNUM* guideposts also support this conclusion. Mo.Rev.Stat. § 435.350 is an integral part of the policy relationship between the insurance company and the insured because it addresses the forum where all disputes concerning the policy will be resolved. Where and by whom a contractual dispute is resolved may have an affect on the substantive outcome of the litigation. See *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny. The fact that Mo.Rev.Stat. § 435.350 addresses an arguably procedural aspect of the relationship between the insured and the insurer does not prevent it from being an integral part of their relationship. In *UNUM,* the Supreme Court held that a state law regulates the business of insurance even though it addresses only the administration of an insurance policy, and not its substantive terms. *UNUM,* 526 U.S. at 374–75, 119 S.Ct. 1380. The third guidepost is also satisfied because the statutory exemption is only applicable to insurance contracts.

In addition, one of the reasons insurance companies have gravitated toward mandatory arbitration clauses is their concern

about the predictability of jury verdicts. *See* Arbitration: Avoiding the Runaway Jury, 23 Am. J. Trial Advoc. 129 (Summer 1999). By making arbitration mandatory, the insurance company has arguably transferred or spread the risk for West's injury from the insurance company to the insured. Even if Mo.Rev.Stat. § 435.350 does not operate to transfer or spread risk, it may still be held to regulate the business of insurance because the common sense view and the other *UNUM* factors are present. *Id.* at 374.

Finally, in *Mutual Reinsurance,* the Tenth Circuit Court of Appeals, in a closely analogous situation, held that the McCarran–Ferguson Act precluded application of the FAA because it would conflict with the Kansas arbitration statute excluding arbitration provisions in insurance contracts. 969 F.2d 931, 932 (10th Cir.1992). The Tenth Circuit held that the Kansas statute regulated the relationship between the insured and the insurer by stating that an agreement to arbitrate is unenforceable. *Id.* Although the Kansas statute at issue was amended and that amendment legislatively overruled the decision reached in *Mutual Reinsurance,* it did not affect its holding with regard to the McCarran–Ferguson Act. The amendment merely provided that reinsurance contracts were not to be considered contracts of insurance. *Friday v. Trinity Universal of Kan.,* 939 P.2d at 872.

The Kansas statute analyzed by the Tenth Circuit Court of Appeals is nearly identical to the Missouri statute at issue in this case. Both are general arbitration statutes which provide that arbitration provisions are generally enforceable. Most important, both statutes specifically contain exceptions that prohibit arbitration provisions in contracts of insurance. Because the Court finds that Mo.Rev.Stat. § 435.350 regulates the business of insurance, the McCarran–Ferguson Act precludes application of the FAA. The arbitration clause sought to be enforced by Standard is invalid and Standard has

failed to state a claim on which relief can be granted. Standard's Complaint against West is dismissed.

**B. Standard's Motion to Dismiss**

Standard also brought a Motion to Dismiss the lawsuit that was originally filed in state court by West and then removed to this Court. Standard argued that the case filed by West should be dismissed or stayed. Standard argued that West's complaint should be dismissed because it was entirely disposed of under the FAA's mandatory arbitration provisions. However, the Court has already determined that the FAA does not preempt Missouri Rev. Stat. § 435.350, which prohibits arbitration clauses in insurance contracts. Therefore, Standard's Motion to Dismiss or Stay West's Complaint is DENIED.

**IV. Conclusion**

Accordingly, for the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Dismiss (Doc. 5) is GRANTED.

It is further

ORDERED that Plaintiff's Motion to Dismiss or Stay West's Complaint (Doc. 7) is DENIED.